VESTER GUEST v. STATE OF MISSISSIPPI.

[52 South. 211.]

1. CRIMINAL LAW AND PROCEDURE. *Manslaughter. Instructions. Definition of offense. Harmless error.*

Where the sole question on the trial of a defendant indicted for manslaughter was whether defendant or another inflicted the fatal wound, the omission of the words, "without malice, in the heat of passion," from an instruction for the state, otherwise in harmony with the statutory definition of the crime (Code 1906, § 1236) does not constitute reversible error.

2. SAME. *Evidence. Dying declarations.*

> Dying declarations to be admissible in evidence must:—
> (*a*) Have been made under a realization of impending death; and
> (*b*) Have been made by a sane person; and
> (*c*) Have relation and be restricted to the homicide and attending circumstances forming a part of the *res gestae.*

3. SAME. *Same. Same. Test of competency.*

> Dying declarations, and parts of them, are incompetent unless the facts declared would be competent and relevant as the testimony of a living witness.

4. SAME. *Same. Preliminary question. Reasonable doubt.*

> The admissibility of dying declarations is determined by the court, and they are inadmissible unless it be shown beyond reasonable doubt that the declarant uttered them under a realization of impending death.

5. SAME. *Prosecuting lawyers. Improper argument. District attorneys.*

> District attorneys are as subject to restraint by the court in their arguments as other lawyers.

FROM the circuit court of, second district, Chickasaw county. HON. JOHN H. MITCHELL, Judge.

Guest, appellant, was indicted for manslaughter in the killing of one Benjamin Ward, was tried, convicted, sentenced to the penitentiary for fifteen years, and appealed to the supreme court. The opinion of the court sufficiently states the facts. The language of the district attorney referred to in the opinion, is set forth in the brief of counsel for appellant.

*Knox & Busby,* for appellant.

For the admission of dying declarations in preliminary hearings by the court for the ascertainment of the facts precedent and necessary to the competency of the proposed evidence, the degree of proof should be such as will exclude all reasonable doubt. And this is doubly important when the competency of any testimony rests upon collateral facts proposed to be proved by the state. In this case the rule applies to the preliminary

question: first, whether Ward at the time realized that he was *in extremis,* and second, whether he was sane and rational; third, whether the existence of that settled feeling of hopelessness on the part of the declarant was proved before the court admitted his statement as a dying declaration. *In favorem vitae,* all doubt should be resolved against the state and in favor of accused. *Bell v. State,* 72 Miss. 510; *Owen v. State,* 59 Miss. 549; *Simmons v. State,* 61 Miss. 257.

In *Ellis v. State,* 56 Miss. 48, Arnold, J., speaking of a confession said: "if there is reasonable doubt against its being free and voluntary it should be excluded." Mabel Ward testified that her husband, the deceased, asked her the next morning after the fight who it was that cut him. She told him that it was Vester Guest. And nowhere in the record can we find that the declarant ever made a free and voluntary statement as to his condition. The witness says that deceased would merely say that he was bound to die, when he was asked about his condition.

It is said in *Lipscomb v. State,* 75 Miss. 559, "that the declaration is usually that of a hostile party and is usually proved by the testimony of his friends and relatives, and has justly caused the courts to restrict its admissibility within well defined limits, and to require clear proof of these conditions, the existence of which are essential to its competency."

A very serious error of the trial court was in the granting of the sole instruction on behalf of the state. By Code 1906, § 1236, manslaughter is defined to be "the killing of a human being without malice in heat of passion, but in a cruel or unusual manner, not in necessary self-defense." And by Code 1906, § 1238, "killing of another in heat of passion without malice, by use of dangerous weapons without authority of law, and not in necessary self-defense." But the court below seemed to think all that was necessary to constitute manslaughter was that the killing had to be done without authority of law and not in

necessary self-defense. A man may kill another without the authority of law and not in necessary self-defense and still not be guilty of manslaughter. For example, excusable homicide. One may imagine innumerable instances where one might kill another not in necessary self-defense and still not violate the law.

The district attorney, in his argument of the case before the jury, exceeded his privilege, and prejudiced the rights of appellant, by the use of language not justified under the evidence. It will be seen that the district attorney said: "That in his judgment this defendant had great reason to thank his God that the grand jury who returned this indictment, rendered it for manslaughter instead of murder, when they were passing upon his case in the grand jury room." This being poisonous argument to be indulged in by the district attorney, counsel for appellant having excepted, the court should have sustained his objection. But in the presence of the jury, the court below overruled appellant's objections and permitted the district attorney to repeat and comment upon what the grand jury did in passing upon appellant's case. It being the law that the mere fact that an indictment against one is no proof against him, jurors should not be prejudiced against a defendant simply because there is an existing indictment against him.

*George Butler,* assistant attorney-general, for appellee.

The appellant absolutely denies the cutting, and his effort on the trial of the cause was to show that the fatal wound was inflicted by Benjamin Ward, his brother-in-law, the party with whom deceased was engaged in the fisticuff fight. This was the only issue in the case, and becomes material in another respect in view of the instruction given on the part of the state and criticized by appellants' counsel.

It is contended by appellant that it was fatal error to admit in evidence the dying declaration of the deceased. But this court will not so hold. Doctor Evans testified that the deceased sev--

eral times stated that he was seriously hurt, and said that "I have very small hopes of recovery," and that "I am going to die," and that "I do not think that I am going to get well." This witness further testified that deceased was suffering severely all the time except when under the influence of opiates, and could hardly breathe at times.

Mabel Ward, wife of the deceased, testified that the deceased had told her several times during his illness that he was going to die and at no time said that he was going to get well; that he suffered greatly all the time as though he could hardly stand it.

It was after these witnesses had testified, that the state proposed to introduce the dying declaration of deceased, to the effect that appellant cut him, but upon objection by counsel for appellant, the trial court ordered the jury to retire and Mabel Ward was further examined; whereupon she again testified substantially as before. While the jury remained out, R. A. Ward, the deceased's brother, was introduced by the state, and testified that deceased said that he would never get well; that he was bound to die; and never expressed any hope of recovery at all from the time the wound was inflicted, to the time of his death, the last statement being made a short time before his death. It was further proved that on the day before the deceased died, it was proposed to send for another physician, and deceased said that it was of no use, that he could not do any good, that he was bound to die. With this preliminary showing, the jury were recalled and Mabel Ward and R. A. Ward permitted to testify before them that deceased stated that appellant had stabbed him.

The rule of when, and under what circumstances, a dying declaration is admissible in evidence was forever settled by the case of *Lipscomb v. State*, 75 Miss. 559. The rule there laid down, is as follows: (a) The words must have been made under a realization and solemn sense of impending death. (b) They

must have been the utterances of a sane mind.   (c) They must
be restricted to the homicide and the circumstances immediately
surrounding it, and forming a part of the *res gestæ.*   (d) A
declaration, or part of it, is not admissible unless it would be
competent and relevant if it were the testimony of a living wit-
ness.   (e) Great caution should be observed in the admission
of dying declarations, and the rule which restricts their admis-
sion should be strictly guarded, and finally, it is said that the
admissibility of a dying · declaration is a preliminary question
for the determination of the court, and the degree of proof re-
quired to establish that decedent realized that he was *in extremis,*
is such as to exclude all possibility of doubt.

In the instant case, three witnesses testified positively that
decedent had a fixed and firm conviction that he was going to
die, and moreover, the positive testimony of one witness is that
deceased was sane at the time of the declaration, and it is no-
where hinted or suggested in the record that the deceased was
not of sane mind.   Neither is there any suggestion that deceased
at any time, had any hope of recovery, therefore it may be safely
said that there was no error in the admission of the dying declara-
tion, but, on the contrary, it appears that the court was careful
to safeguard every right of the appellant and to remove every
element of doubt before permitting it to be heard.

It is next suggested by learned counsel for appellant that the
instruction granted the state were fatally erroneous because it
omitted all reference to "heat and passion" and "malice."   It
will be remembered that appellant was indicted for manslaugh-
ter, and the distinguishing feature between manslaughter and
murder is, deliberation and malice in murder, and the want of
deliberation and malice in manslaughter.

It is a common and approved practice to give instruction for
the state to the effect that every wilful and malicious killing, not
excusable or justifiable, is either murder or manslaughter; mur-
der, if done deliberately, and manslaughter if done without any

deliberation whatever; and it would have added nothing to this instruction for the state had it stated that if the jury believed that defendant stabbed James Ward in the heat of passion and without malice, they should find defendant guilty. Especially is this true when the only issue, as before stated, and as shown by the numerous witnesses for appellant, was whether deceased was stabbed by Benjamin Ward or by the appellant. In other words, the instructions for appellant are the converse of the state's instruction.

Complaint is made by appellant of the argument of the district attorney, but it is perfectly manifest by an inspection of the record, that he did not exceed legitimate bounds.

McLAIN, C.

At the October term, 1909, of the circuit court of the Second district of Chickasaw county, the appellant, Vester Guest, was tried, convicted, and sentenced to the state penitentiary for a term of fifteen years, upon a charge of manslaughter, from which judgment and sentence he prosecutes this appeal. To have a clear conception of the questions of law presented by this appeal, we deem it necessary to give a brief statement of the facts.

On July 4, 1907, James Ward, the deceased, and his brother, Benjamin Ward, along with their families were returning home from a picnic, and while en route the two brothers, James and Benjamin Ward became involved in a fist fight, and before the fight ceased Vester Guest, the appellant, a brother-in-law to Benjamin Ward, came upon the scene, and at a certain stage of the difficulty it is alleged that he ran up behind the deceased, James Ward, at a time when the two brothers seem to have been separated, and stabbed him with a knife, striking him between the third and fourth ribs, in the left side, about two inches above the heart. About fourteen days thereafter James Ward, the deceased, died from the result of this wound. There is much conflicting testimony by the witnesses in giving their version of

this difficulty; but we deem it wholly unnecessary to go into the ·details of it, further than to say that the appellant, Vester Guest, stoutly denied that he was the party who stabbed James Ward. Upon the trial of this case his chief effort was to show that the fatal wound was not inflicted by him, but, on the contrary, was inflicted by Benjamin Ward, the party who was engaged in the fist fight with James Ward, the deceased. This was the sole is-·sue in this case before the jury.

·We have thoroughly considered the record in this case, and so far as the facts are concerned the jury was, in our opinion, fully warranted in returning a verdict of guilty. While appellant as-signed many errors, there are only three that are seriously pressed and discussed in counsel's brief.

Appellant earnestly and seriously contends that the instruc-tion, the only one asked by the state, is fatally erroneous. The in-·struction reads: "The court charges the jury that if you believe from the evidence beyond a reasonable doubt that the defendant stabbed and killed the deceased, without authority of law and not in necessary self-defense, you should find the defendant guilty as charged." One of the instructions for the defendant ·charges "that if there is any possibility from the evidence that Benjamin Ward, or any one else than the defendant, stabbed ·the deceased, James Ward, then a reasonable doubt as to his ·guilt does appear, and under these circumstances it is the duty of the jury to find the defendant not guilty, and the jury ·under such circumstances should return a verdict of not guilty." The sole issue before the jury in this case was whether Benja-min Ward or Vester Guest inflicted the fatal wound. The criti-cism made upon the instruction of the state is that it leaves out the words "without malice" and "in the heat of passion" as de-·fined by section 1236 of the Code of 1906. It is true a man may kill another without authority of law, and not in necessary self-defense, and still not be guilty of manslaughter. As an ab-stract proposition the instruction is open to criticism, but as ap-

plied and interpreted in the light of the facts of this case we cannot conceive how the defendant was harmed or prejudiced by the state's instruction, by leaving out the words "without malice" and "in the heat of passion," when considered in the light of the facts of this particular case.

Complaint is made against some of the expressions used by the district attorney in his argument before the jury. District attorneys are subject to restraint by the court as other members of the bar; but upon an investigation of this record it is clear the district attorney did not abuse his privilege in the argument, and it is manifest that he did not exceed the bounds of legitimate debate.

It is contended by the appellant with much zeal that the trial court committed a fatal error in admitting as evidence the dying declaration of the deceased, to the effect that defendant cut him. When objection was made by the appellant to the introduction of this evidence, the court caused the jury to retire with a view to ascertain and determine for itself whether or not the declaration would be admissible. For this purpose the court examined Dr. Evans, the attending physician, who testified that deceased told him that he thought he was severely hurt all the time and claimed that he was going to die. Not at any time did he hold out any hope of recovery, and did not think he was going to get well. He suffered severely all the time, except when under the influence of opiates. Deceased had difficulty in breathing. During his sickness he was conscious and was at himself. Mabel Ward testified that, after he was stabbed, "he suffered like he couldn't stand it. He never talked to me like he could get well. He told me several times during his sickness that he was going to die." The court also examined R. A. Ward, who testified that deceased said to him "that he never could get well;" "I am bound to die." He asked deceased, "Do you realize that you are going to die?" and he said, "I am bound to die." He stated, further, that the deceased never at any time

expressed any hope of recovery, from the time he was stabbed to the hour of death. It was further shown to the court that the day before he died, on the suggestion of friends to call in another doctor, the deceased stated that it was no use; that he could not do any good; that he was bound to die.

Under this showing, the court, over the objection of the appellant, admitted the dying declaration to the jury. Mrs. Ward and R. A. Ward testified that the deceased told them that appellant stabbed him. The rules governing the admission in evidence of a dying declaration have been announced by this court time and again, and especially are they thoroughly discussed in the case of *Lipscomb v. State,* 75 Wis. 559, 23 South. 210, 230. The recognized rules are: "They must have been made under the realization and solemn sense of impending death. They must have been the utterances of a sane mind. They must be restricted to the homicide, and the circumstances immediately attending it, and forming a part of·the *res gestæ.* A declaration, or a part of it, is not admissible, unless it would be competent and relevant if it were the testimony of a living witness; and great caution should be observed in the admission of dying declarations, and the rules which restrict their admission should be carefully guarded." This court has held, further, "that as a preliminary question the admissibility of a dying declaration is determined by the court, and the degree of proof required to establish that the declarant realized he was *in extremis,* is such as to exclude all reasonable doubt."

Tested by the foregoing principle, we are of the opinion that the judgment of the court below was right in holding that the foundation was sufficiently laid to admit as evidence the dying declaration of the deceased. Three witnesses testified that deceased had, during his entire sickness, a fixed conviction that he was going to die, and one witness testified that he said, "I am bound to die." There is positive testimony that the deceased, during the entire time of his sickness, was sane. Indeed, it is:

nowhere hinted or suggested in the record that the deceased was not of sane mind; nor is it suggested in the record anywhere that the deceased, at any time during his last illness, had or expressed any hope of recovery. Taking this in the light of the nature and extent of his wound, his physical state, his evident danger, his conduct, the occurrence of death soon thereafter, and all other circumstances connected therewith, we are of the opinion that the trial court committed no error in admitting as evidence the dying declaration of the deceased.

Taking the record upon the whole, we are of the opinion that the defendant had a fair and impartial trial as guaranteed to him by the laws and Constitution of the state, and, we accordingly affirm the judgment.

PER CURIAM. For the reasons set out in the foregoing opinion of the Commissioner, the judgment is affirmed.

*Affirmed.*