STATE OF MAINE *vs.* ALEXANDER J. BORDELEAU.

Aroostook.     Opinion January 3, 1920.

*Dying declarations.   General rule as to admissibility of same.   Questions to be considered in passing upon the admissibility of such declaration.   Massachusetts rule relative to same.*

When, in trials for homicide, the declarations of the victim are offered in evidence as dying declarations, it must appear to the presiding Justice that at the time of making the statements, the deceased was conscious of the certainty of approaching speedy death; if any hope of recovery remained, the declarations are inadmissible.

It is not sufficient that the deceased has only the belief that he may ultimately die of his injuries.   Death, shortly to ensue, must be an absolute certainty, so far as the consciousness of the person making the declaration is concerned.

The actual period of survival after making the declaration is immaterial.   It is the consciousness of almost immediate dissolution, and not the rapid succession of death in point of fact, that renders the testimony admissible.

This consciousness of impending death may be established by any relevant evidence.   The range of competent evidence may include evidence of the physical condition of declarant at the time of making the statement, from which the inference may be legitimately drawn that the declarant had a conscious sense of impending death, as well as evidence of the declarant's conduct and declarations.

In the instant case, the State's attorney having stated his intention of offering the statements of the victim as dying declarations, the presiding Justice ordered the jury to retire and heard the evidence of the witnesses as to the condition of the victim and his consciousness of impending death.   *Held,* that upon the facts as shown in evidence the presiding Justice was fully justified in admitting the declarations of the deceased, stating the details of the assault upon him and naming the respondent as his assailant.

When evidence of the declarations of the deceased has been admitted by the presiding Justice, its credibility is for the consideration of the jury, who should have the opportunity to weigh all the circumstances under which the declarations were made, including those already proved to the presiding Justice, and may give the testimony and the declarations such credit as they think they may deserve.

Having ruled that the statements of deceased were dying declarations and, as such, competent evidence, the presiding Justice in his charge submitted the same question to the jury; after first fully defining the rule of admissibility of dying declarations, he instructed the jury that they must find that the declarations were made by deceased under the sense of impending death as so defined, before they should consider them as dying declarations.

*Held:*

That the respondent was not prejudiced by the procedure adopted; it gave the opportunity for his counsel to reargue to the jury the question of fact upon which the presiding Justice had ruled adversely to him on the preliminary hearing; he was thus allowed a second chance to have the declarations excluded from consideration.

Indictment for murder. Respondent was found guilty. To the ruling of the court relative to admissibility of dying declarations of deceased, certain exceptions were filed by respondent. Judgment in accordance with opinion.

Case stated in opinion.

*Guy H. Sturgis,* Attorney General of the State of Maine, *Bernard Archibald, and William R. Roix,* County Attorney of Aroostook County, for the State.

*John P. Deering, and Charles P. Barnes,* for respondent.

SITTING: SPEAR, HANSON, DUNN, MORRILL, WILSON, DEASY, JJ.

MORRILL, J. The respondent has been convicted of the murder of one Moses Tozier committed on the sixteenth day of November, 1917. At his trial counsel for the State proposed to offer in evidence certain declarations of the deceased, as dying declarations. The presiding Justice directed the jury to retire, and in their absence heard the testimony of five witnesses, and then ruled that the deceased had, at the time of making the declarations, given up all hope of life, and that the declarations were admissible. To this ruling respondent has exceptions.

The jury was then recalled and the same witnesses, and an additional witness, were examined in the presence of the jury as to the condition of the deceased, his realization of impending death, and were permitted, against objections by respondent's counsel, to give in evidence declarations of deceased as to details of the assault,

naming the respondent as his assailant. To this ruling admitting said declarations in evidence before the jury respondent also has exceptions.

Counsel accept the general principle that the solemnity of the situation of a person under the conviction that he is about to die, with all hope of recovery gone, supplies a circumstantial guaranty that his statements are in accordance with the truth, notwithstanding they are not sanctioned by oath, and that cross-examination is impossible. "As this guaranty consists in the subjective effect of the approach of death," to use the language of Mr. Wigmore, (2 Wigmore on Ev. Sec. 1439,) it must appear to the presiding Justice that at the time of making the statements, the deceased must be conscious of the certainty of approaching speedy death; if any hope of recovery remains, the declarations are inadmissible; nor is it sufficient that the deceased has only the belief that he may ultimately die of his injuries. To quote from a case on respondent's brief: "The person making the declaration shall have a complete conviction that death is at hand. . . . . Death, shortly to ensue, must be an absolute certainty, so far as the consciousness of the person making the declaration is concerned." Beasley, C. J., in *Peak* v. *State*, 50. N. J. L., 222. But the actual period of survival after making the declaration is immaterial. It is the consciousness of almost immediate dissolution, and not the rapid succession of death in point of fact, that renders the testimony admissible. These propositions are supported by the authorities: 1 Greenleaf on Ev., Sec. 158; 1 Phillips on Ev. 2d Amn. Ed., 235, Cowen & Hill's Notes, No. 453; 2 Wigmore on Ev., Sec. 1438, et seq.; 4 Chamberlayne on Ev., Sec. 2831 et seq.

This consciousness of impending death, this phase of mind, may be established by any relevant evidence. The range of competent evidence is wide. It may include evidence of the physical condition of the declarant at the time of making the statement, from which the inference may be legitimately drawn that the declarant had a conscious sense of impending death, as well as evidence of the declarant's conduct and declarations. 1 Greenleaf on Ev., Sec. 158; 4 Chamberlayne on Ev. Sec. 2831 et seq.; 2 Wigmore on Ev., Sec. 1442.

· The Attorney General apparently agrees with counsel for respondent that the determination of the presiding Justice, upon the preliminary hearing, that the alleged dying declarations were admissible,

presents a question of law, and may be reviewed on exceptions. *Com.* v. *Roberts*, 108 Mass., 296, 302.   We express no opinion thereon, but proceed to consider the case as presented.

Upon the preliminary hearing in the absence of the jury the presiding Justice heard the testimony of five witnesses: Pearl E. Morgan, Daniel H. Perry, Edna Rogerson, Johnson Morgan and Dr. George W. Upton.   The bill of exceptions includes a transcript of the testimony of Harold S. Merry and Dr. Frank H. Jackson, the medical examiner; the bill does not affirmatively show when the testimony of Merry and Dr. Jackson was heard; it is stated in the brief for the State, and does not appear to be controverted by the defense, that these witnesses were called and examined before the jury retired; this is plainly to be inferred as to Dr. Jackson from the testimony of Dr. Upton, when re-examined before the jury, that he had heard Dr. Jackson's testimony as to the conditions that he found and the cause of death, and agreed with his conclusions.

What then was the scene as presented to the presiding Justice?

In mid-afternoon of the day following the assault, the deceased, a man about sixty-five years old, spare of figure, about five feet, eight inches tall, is found lying diagonally across a bed in an upstairs bedroom of his house; he was in his shirt sleeves, wearing his trousers and leather-topped lumbermen's rubbers; he was partly covered by the bed clothes; he was conscious.   Upon his head were six distinct cuts, such as could be made by a blunt instrument with small striking surface; five of these wounds were complicated by compound fractures of the skull.   "These compound fractures," to quote the medical examiner, "were situated chiefly in the top and back part of the head. There was one line of fracture that ran from the most prominent portion of the skull practically through from before, backward through the skull into the frontal bone itself, and from each of these blows there were radiating lines of fractures.   Practically the whole top of the skull was more or less broken up."   The head and hands of the man were covered with dried blood; his clothes and the bed-clothes were smeared with dried blood; upon the floor was a pool of blood, about one foot by two feet, which had dried, and around this spot were spots of dried blood, such as might be made with the hand. Into this room comes Pearl E. Young, an acquaintance of nearly forty years; to the inquiry as to how he felt, the deceased replied "Awfully bad.   He pounded me all up.   I am all in;" and later he

said that he was going to die. In a few minutes other friends and a physician arrived; as he is held up upon the bed in the arms of a friend and while the doctor is dressing the wounds upon the head, he said, "Let me back, Dan, I am awful sick. I will die anyway. Let me die in peace." Shortly afterwards he told the witnesses the details of the assault and named the respondent as his assailant; this was on Saturday afternoon; he retained consciousness until about ten o'clock Sunday night and died about four o'clock Monday afternoon. No expression from him indicating any hope of recovery appears in the testimony of any witness. Later on Saturday afternoon, after he had been bathed and his clothes were changed, he said to Johnson Morgan, one of the witnesses, "Johnson, you think I am going to get around all right?" Morgan replied, "Yes, we will have you around in a day or two," to which deceased said, "Well, I shan't get around again. I am all done."

In view of such conditions, of the length of time which had elapsed since the assault, of his physical condition so obvious to, and well understood by himself, his positive declarations furnish convincing proof of the declarant's consciousness of speedy, certain death. The evidence meets even the stringent test of proof beyond a reasonable doubt adopted by some courts. *People* v. *White*, 251 Ill., 67, 75. *Guest* v. *State,* 96 Miss., 871, 52 So., 211.

In the opinion of the court the presiding Justice did not err in admitting in evidence the declarations of the deceased stating the details of the assault upon him and naming the respondent as his assailant. The declarations as given by the witnesses fully meet the requirements of completeness; they are free from all indication of malice or desire for revenge.

As a result of this conclusion the exceptions must be overruled. The jury was recalled and the testimony of the five witnesses named, and of a sixth witness, was submitted to them. To their testimony before the jury as to the declarations of the deceased the respondent's counsel has exceptions on the ground that sufficient foundation had not been laid for admitting the declarations. But at that stage of the case the declarations and all the conditions under which they were made were matters for the consideration of the jury. The court had ruled, correctly as we hold, that the declarations were admissible. After the evidence is admitted, its credibility is entirely within the province of the jury, who should have the opportunity to weigh all

the circumstances under which the declarations were made, including those already proved to the presiding Justice, and may give the testimony and the declarations such credit as they think they may deserve. 1 Greenleaf on Ev., Sec. 160; 4 Chamberlayne on Ev., Sec. 2858; 2 Wigmore on Ev., Sec. 1451; 2 Phillips on Ev., Cowen & Hill's notes, page 611, note 457.

Under the procedure adopted by the presiding Justice the evidence admitted was also a matter for the consideration of the jury. In ruling upon the admissibility of the declarations of the deceased the presiding Justice said: "I shall follow the Massachusetts practice, and ask the jury to find as a fact that they do come within the rule of admissibility before they can take them into consideration as dying declarations," and in his charge, to which exceptions do not appear to have been taken, he instructed the jury accordingly. Neither in his bill of exceptions nor in his brief does respondent's counsel question the correctness of this procedure. We have therefore no occasion to consider it. The reasons for the Massachusetts practice are set forth in *Com.* v. *Brewer,* 164 Mass., 577, 582, and the practice, when the evidence is admitted, of allowing the objecting party to reargue to the jury the preliminary question, as well as the truth of the declaration, is recognized in *Com.* v. *Bishop,* 165 Mass., 148, 152.

The reasons for the opposite view are forcibly stated by Mr. Wigmore in 2 Wigmore on Ev., Sec. 1451.

In 1 Greenleaf on Ev., Sec. 160, and in 1 Phillips on Ev., 2d Am., Ed., page 235 and in 2 Russell on Crimes 5th Am. Ed., page 761, it is said to have been decided by all the Judges of England that the question, whether the deceased made the declarations under the apprehension of death, is a question for the Judges, not for the jury to determine; in 4 Chamberlayne on Ev., Sec. 2830 this is said to be the prevailing rule; Judge Andrews in *People* v. *Smith,* 104 N. Y., 491, 58 Am. Rep., 543, says that this has been the generally accepted rule in this country. In *Donnelly* v. *State,* 26 N. J. L., 463, on page 503, it is said, "The jury were told that they were to consider, in the first place, whether Moses, when he made the declarations, was under the belief that he was at the point of death, and every hope of this world gone, and that they were to decide whether each of his declarations were made under the sense of impending death, and entirely to reject all declarations which in their opinion were not made under such apprehension. This instruction we regard is incorrect; and if the

court had themselves avoided the decision of that question and shifted the responsibility to the jury, the instruction would have been fatally erroneous. . . . . The instruction being in favor of the prisoner, giving him not only the judgment of the court but of the jury also, it affords no ground for error." In a later case in the same State, *State* v. *Monich*, 74 N. J. L., 522, 527, (1906) a refusal to give an instruction, permitting the jury to revise the finding of the trial court upon the question of fact whether the declaration was made under a sense of impending death, and to disregard the declaration if they disagreed with the conclusion of the judge upon this point, was upheld. In *Com.* v. *Bishop*, 165 Mass., 148, 152 it is held that if the evidence is excluded, the decision of the trial Judge is conclusive, unless some question of law is reserved.

Without entering into the discussion, it is sufficient to say that the respondent was not prejudiced by the procedure adopted; it gave the opportunity for his counsel to reargue to the jury the question of fact upon which the presiding Justice had ruled adversely to him on the preliminary hearing; he was thus allowed a second chance to have the declarations excluded from consideration. *Com.* v. *Brewer*, 164, Mass., 577, 582; *Com.* v. *Tucker*, 189 Mass., 457, 475; *Donnelly* v. *State*, supra. The entry must be,

*Exceptions overruled.*
*Judgment for the State.*