THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* SANTA CLAUDIO, Defendant and Appellant.

Nos. CR-64-412, CR-64-413.     Decided February 2, 1966.

*José Rafael Gelpí* and *Sergio A. Peña Clos* for appellant. *Rodolfo Cruz Contreras, Acting Solicitor General,* and *Manuel Tirado Viera, Assistant Solicitor General,* for The People.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Santa Claudio was charged with the killing of a human being. She was also charged with carrying weapons. Upon

conviction, she was sentenced to serve from 15 to 25 years in the penitentiary in the first case and to one year in jail in the second.

The defendant and her husband lived on a piece of land adjacent to the parcel where the victim lived. Disagreements arose between them because the victim would not permit defendant and her husband to cross freely through the parcel to reach the house where they lived. For that reason personal incidents often arose. Two days prior to the crime the victim resorted to the district court and filed a complaint for libel and slander against the defendant and her husband.

On the day of the occurrence the defendant entered the house of the victim who at that moment was sitting on the porch reading a newspaper. The prosecution evidence was to the effect that the defendant attacked the victim with a knife, inflicting several wounds which caused his death. Defendant presented evidence to establish that she went to talk to the victim and that the latter kicked and injured her and then she got hold of a knife and in self-defense inflicted the wounds from which he died.

Appellant alleges that the trial court committed the following errors: (1) "in permitting a prosecution witness to present hearsay evidence"; (2) "in admitting the statement of a person of unsound mind"; (3) "in admitting evidence on the alleged ill reputation of defendant"; and (4) "in submitting to the jury a dying declaration to enable it to determine whether or not it was admissible, thereby violating the due process of law to which the accused is entitled both by command of the Constitution of the Commonwealth and of the United States of America."

1. The first assignment of error refers to a certain part of the testimony of prosecution witness Delfín Aponte. The latter testified that when he arrived at the place of the facts

he found the victim who, still wounded and holding a knife in his hand, said to him referring to the defendant, "I took the knife away from her, I could have killed her, and I did not want to." (Tr. Ev. 72.)

The testimony of a witness on statements made by the victim in connection with the facts of the case, when the purpose of the statement is to prove such facts, constitutes hearsay evidence and is therefore inadmissible, unless it is one of the exceptions established by law. *People* v. *Villanueva*, 71 P.R.R. 858 (1950). In the absence of evidence to show that these statements were made by the victim in contemplation of death, which were contemporaneous with the event or which were voluntarily made while the declarant was in a state of nervous excitement, it must be concluded that the court erred in admitting this testimony in evidence.

However, this error was not prejudicial since defendant herself admitted the fact sought to be proved with the testimony erroneously admitted, that she had a knife in her hands, alleging self-defense.

2. The second error does not merit discussion. Appellant at no time during the trial challenged the capacity of the witness nor objected to the testimony given by him. His testimony was coherent and orderly.

3. As to the third error, the record shows that on examination the defendant referred to certain "propositions" and "love promises" which the decedent had made to her and her resistance thereto. Since defendant on direct examination made reference to those propositions and love promises, the district attorney could on cross-examination question her on her relations with her husband and with other persons.

In *People* v. *Archeval*, 74 P.R.R. 478, 482–83 (1953), we set forth the rule justifying the district attorney's conduct complained of by appellant. There we said: "Once the

defendant takes the witness stand, he becomes a witness just like any other and is subject as any other witness to the same rules and procedures regulating the examination and cross-examination, *People* v. *Dumas,* 51 P.R.R. 819 . . . and pursuant to § 155 of the Law of Evidence (§ 517 of the Code of Civil Procedure), the district attorney could cross-examine the defendant as to any fact stated in the examination or connected therewith." See, also, *People* v. *Iturrino de Jesús,* 90 P.R.R. 687 (1964).

4. Let us turn to the fourth error assigned. The district attorney produced a witness who testified on certain statements made by the victim shortly before dying.[1] Evidence was presented out of the presence of the jury to show the condition of the victim at the time he made the statements. Based on that evidence, the court held, "as a question of law, that it is a dying declaration, that is, a declaration in articulus mortis. It should likewise go to the jury in order that the latter may determine, as a matter of fact, whether that dying declaration was made by the decedent in the belief that he was about to die." Thus, the evidence on the condition of the victim at the time of making the statements was again offered before the jury. (Tr. Ev. 108.) And in transmitting the instructions to the jury, it said:

". . . You must decide, as a question, before considering the merits of the weight which you may give to the statements of Alverio [the victim], that Alverio made them while he was conscious that he was going to die, and believed that he was going to die and had no hope of surviving. . . . If after con-

---

[1] The statements were the following:

"He told me that Santa Claudio had wounded him. I asked him the reason and he told me that because of boundaries of the right of way. He told me that he was reading 'El Imparcial' with his back to the door, and that she entered the porch and stabbed him on the left shoulder and also on the thorax when he stood up; that she tried to leave by the east side of the house and that he was able to disarm her. I asked him why he did not defend himself and he told me that he knew that he was going to die and wanted to have a clear conscience."

sidering those statements you reach the conclusion that Guillermo Alverio, in saying what he stated to policeman Flor Velázquez, was positively sure that he was going to die, that he had no hope of living, it is then your duty to consider it as a dying declaration and to take it into consideration in order to weigh the credit to be given then to the statements of Alverio jointly with the rest of the evidence." (Tr. Ev. 198–99.)

The procedure followed by the trial court of resubmitting to the jury the question of whether the victim made the statements in contemplation of death does not seem to be the most correct.

■■ The judge is the only one bound to determine, as a question of law, whether the statements offered were actually made in contemplation of death. Such a determination is the exclusive province of the presiding judge. However, once the evidence is admitted, the jury may believe it or not. Even though the jury believed that they were not made in contemplation of imminent death, they may still believe the truthfulness of the statements and likewise, believing that they were made in articulo mortis, they may not give them credit. The weight given to them is the exclusive province of the jury.

Wigmore explains the rule as follows:

"After a dying declaration, or any other evidence has been admitted, the weight to be given to it is a matter exclusively for the jury. They may believe it or may not believe it; but, so far as they do or do not, their judgment is not controlled by rules of law. Therefore, though they themselves do not suppose the declarant to have been conscious of death, they may still believe the statement; conversely, though they do suppose him to have been thus conscious, they may still not believe the statement to be true. In other words, their canons of ultimate belief are not necessarily the same as the preliminary legal conditions of Admissibility, whose purpose is an entirely different one.

"It is therefore erroneous for the judge, after once admitting the declaration, to instruct the jury that they *must* reject the declaration, or exclude it from consideration, if the legal requirement as to consciousness of death does not in their opinion exist. No doubt they *may* reject it, on this ground or on any other; but they are not to be expected to follow a definition of law intended only for the judge." 5 Wigmore, Evidence, § 1451 (3d ed.).

■ Notwithstanding the rule stated, some jurisdictions follow the procedure which the trial judge did. *People* v. *González*, 198 P.2d 81 (Cal. 1948); *People* v. *Denton*, 19 N.W.2d 476 (Mich. 1945).[2] And in following the same we believe that it does not prejudice defendant. It does not prejudice her because she has another opportunity before the jury which will determine whether the statements attributed to the victim were made in contemplation of death. If the jury shall so determine, they certainly would not give weight to the statements themselves. As stated in *State* v. *Bordeleau*, 108 Atl. 464 (Me. 1920), based on the rule prevailing in the state of Massachusetts:

"Without entering into the discussion, it is sufficient to say that the respondent was not prejudiced by the procedure adopted; it gave the opportunity for his counsel to reargue to the jury the question of fact upon which the presiding justice had ruled adversely to him on the preliminary hearing; he was thus allowed a second chance to have the declarations excluded from consideration. *Com.* v. *Brewer*, 164 Mass. 577, 582, 42 N.E. 92; *Com.* v. *Tucker*, 189 Mass. 457, 475, 76 N.E. 127, 7 L.R.A. (N.S.) 1056. *Donnelly* v. *State, supra.*"[3] 26 N.J. Law 463, 503.

[2] See, Lane, Víctor H., *The Right of the Jury to Review the Decisions of the Court upon the Admissibility of Evidence as Illustrated in the Law of Dying Declarations*, 1 Mich. L. Rev. 624.

[3] The procedure followed by the presiding judge is the same as that followed in the state of Massachusetts for the admission of confessions and which the Supreme Court of the United States said, in discussing the question in *Jackson* v. *Denno*, 378 U.S. 368 (1964), was acceptable. To that effect it stated in footnote 8 appearing at p. 378 the following:

That was precisely what occurred in the present case. The procedure followed by the judge gave defendant another opportunity to show before the jury that the victim was not in articulo mortis at the time of making the statements.

None of the errors having been committed, the judgments appealed from will be affirmed.

"We raise no question here concerning the Massachusetts procedure. In jurisdictions following this rule, the judge hears the confession evidence, himself resolves evidentiary conflicts and gives his own answer to the coercion issue, rejecting confessions he deems involuntary and admitting only those he believes voluntary. It is only the latter confessions that are heard by the jury, which may then, under this procedure, disagree with the judge, find the confession involuntary and ignore it. Given the integrity of the preliminary proceedings before the judge, the Massachusetts procedure does not, in our opinion, pose hazards to the rights of a defendant. While no more will be known about the views of the jury than under the New York rule, the jury does not hear all confessions where there is a fair question of voluntariness, but only those which a judge actually and independently determines to be voluntary, based upon all of the evidence. The judge's consideration of voluntariness is carried out separate and aside from issues of the reliability of the confession and the guilt or innocence of the accused and without regard to the fact the issue may again be raised before the jury if decided against the defendant. The record will show the judge's conclusions in this regard and his findings upon the underlying facts may be express or ascertainable from the record."