EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* SANTA CLAUDIO, acusada y apelante.

*Números:* CR-64-412      *Resueltos:* 2 de febrero de 1966
CR-64-413

134

*José Rafael Gelpí* y *Sergio A. Peña Clos*, abogados del apelante; *Rodolfo Cruz Contreras, Procurador General Interino,* y *Manuel Tirado Viera, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Santa Claudio fue acusada de dar muerte a un ser humano. Fue acusada además de portar armas. Convicta, se le

condenó a cumplir de 15 a 25 años de presidio en el primer caso y a un año de cárcel en el segundo.

La acusada y su esposo vivían en un predio de terreno contiguo a uno donde residía la víctima. Surgieron diferencias entre ellos por motivo de que la víctima no permitía a la acusada y a su esposo atravesar libremente por su predio para llegar a la casa donde residían. Por ese motivo a menudo surgían incidentes personales. La víctima, dos días antes de los hechos, acudió a la corte distrito y radicó denuncias por injurias y calumnias contra la acusada y su esposo.

El día de los hechos la acusada entró a la casa de la víctima cuando en ese momento leía un periódico sentado en el balcón. La prueba de cargo fue al efecto de que la acusada agredió con un cuchillo a la víctima infiriéndole las heridas que le causaron la muerte. La acusada presentó prueba para establecer que ella fue a hablar con la víctma y ésta la agredió a puntapiés y entonces ella logró alcanzar un cuchillo y en defensa propia le infirió las heridas de las cuales murió.

La apelante imputa al tribunal sentenciador los siguientes errores: (1) "permitir que un testigo de cargo aportase prueba de referencia . . ."; (2) "permitir la declaración de un demente"; (3) "admitir prueba sobre la supuesta mala reputación de la acusada" y (4) "someter al jurado una declaración en artículo mortis para que el jurado determinara si era admisible o no, violando así el debido procedimiento de ley a que tiene derecho el acusado tanto por disposición de la Constitución del Estado Libre Asociado como de los Estados Unidos de América".

1. El primer señalamiento de error se refiere a cierta parte de la declaración del testigo de cargo Delfín Aponte. Dijo éste que al llegar al lugar de los hechos encontró a la víctima, quien todavía herido y con un cuchillo en la mano le dijo refiriéndose a la acusada, "le quité el cuchillo, la pude haber matado y no quise". (T.E. pág. 72.)

■ La declaración de un testigo sobre manifestaciones que hiciera la víctima relacionada con los hechos del caso cuando el propósito de la declaración es probar tales hechos constituye prueba de referencia y es por tanto inadmisible a menos que se trate de una de las excepciones establecidas por ley. *Pueblo* v. *Villanueva*, 71 D.P.R. 917 (1950). En ausencia de prueba que demuestre que estas manifestaciones de la víctima se hicieron en contemplación de muerte, que fueran contemporáneas al suceso o que fueron hechas espontáneamente, mientras el manifestante se encontraba en un estado de excitación nerviosa, debe concluirse que incurrió en error el tribunal al admitir este testimonio en evidencia.

■ Sin embargo, este error no fue perjudicial ya que la propia acusada admitió el hecho que se intentó probar mediante el testimonio erróneamente admitido, que ella tenía un cuchillo en las manos, pues alegó defensa propia.

■ 2. El segundo error no merece discutirse. La apelante en ningún momento en el juicio impugnó la capacidad del testigo ni objetó al testimonio que ofreciera. Su declaración fue coherente y ordenada.

■ 3. En cuanto al tercer error el récord muestra que durante el interrogatorio la acusada se refirió a ciertas "proposiciones" y "ofertas amorosas" que le había hecho el occiso y su resistencia a ellas. Como la acusada en el interrogatorio directo hizo referencia a esas proposiciones y ofertas amorosas, el fiscal podía en el contrainterrogatorio preguntarle sobre sus relaciones con su esposo y con otras personas.

■ En *Pueblo* v. *Archeval*, 74 D.P.R. 512, 515–516, expusimos la regla que justifica la conducta del fiscal de la que se queja la apelante. Dijimos allí: "Una vez que el acusado se sienta a declarar, se convierte en un testigo como cualquier otro y está sujeto a las mismas reglas y procedimientos en cuanto a la pregunta y repregunta que cualquier testigo, *Pueblo* v. *Dumas*, 51 D.P.R. 844 . . . y conforme al artículo

155 de la Ley de Evidencia (artículo 517 del Código de Enjuiciamiento Civil), el fiscal podía repreguntar al acusado respecto a. cualesquiera hechos mencionados en el interrogatorio, o relacionados con los mismos." Ver además, *Pueblo* v. *Iturrino de Jesús*, 90 D.P.R. 706 (1964).

4. Pasemos al cuarto error apuntado. El fiscal presentó un testigo que declaró sobre ciertas manifestaciones hechas por la víctima poco antes de morir.[1] Se presentó prueba en ausencia del jurado para demostrar la condición en que se encontraba la víctima cuando hizo las manifestaciones. Fundándose en esa prueba el tribunal resolvió "como cuestión de derecho, que es un 'dying declaration' o sea una declaración en *articulus morti*. Deberá ir asimismo a la consideración del Jurado para que éste determine como cuestión de hecho si esa 'dying declaration' la hizo el interfecto bajo la creencia de que había de morir próximamente." Así, se ofreció otra vez ante el jurado la prueba sobre la condición de la víctima al hacer sus manifestaciones. (T.E. pág. 108.) Y al transmitir las instrucciones al jurado manifiesta:

" . . . Ustedes tienen que resolver, como cuestión antes de entrar a considerar los méritos del valor que puedan darle a las manifestaciones de Alverio [la víctima] las hizo en el momento que Alverio está consciente de que había de morir y creía que había de morir y no tenía ninguna esperanza de poder sobrevivir . . . . Si después de considerar esas declaraciones ustedes llegan a la conclusión de que Guillermo Alverio al manifestar lo que le dijo al policía Flor Velázquez tenía la firme creencia de que iba a morir, de que no tenía esperanza de vivir, entonces deben considerarla como un 'dying declaration' como se dice en inglés y tomarla en consideración para pesar el crédito que entonces le

---

[1] Las manifestaciones fueron las siguientes:

"El me habló que quien lo había herido fue la señora Santa Claudio. Le pregunté el motivo y me dijo que por colindancias del paso. Me dijo que estaba leyendo El Imparcial de espaldas a la puerta y que ella entró a la galería y le dio una puñalada en el hombro izquierdo y también en el tórax cuando él se paró; que ella trató de coger por el lado Este de la casa y que él la pudo desarmar. Le pregunté porque [*sic*] no se defendió y me dijo que sabía que iba a morir y quería tener la conciencia tranquila."

pueda merecer las manifestaciones de Alverio conjuntamente con el resto de la prueba." (T.E. págs. 198–199.)

El procedimiento seguido por el tribunal de instancia de someterle al jurado nuevamente la determinación de si la víctima hizo las manifestaciones en contemplación de la muerte no parece ser el más correcto.

El juez es el único que debe determinar como cuestión de derecho si las manifestaciones ofrecidas fueron en verdad hechas en contemplación de la muerte. Esa determinación es providencia exclusiva del juez que preside la vista. Ahora bien, una vez admita la evidencia, el jurado puede creerla o no. Aunque el jurado entendiera que no fueron hechas en contemplación de muerte inminente, todavía pueden creer la verdad de las manifestaciones, y, asimismo, creyendo que fueron hechas en *articulo mortis,* pueden no darle crédito. El peso que a ellas le den es providencia exclusiva del jurado.

Así explica Wigmore la regla:

"Luego que una manifestación en contemplación de la muerte (*dying declaration*), o cualquiera otra evidencia, ha sido admitida, el peso que se le dé a ésta es materia exclusiva para el jurado. Pueden creerla o pueden no creerla; pero, en cuanto a si lo hacen o no, su juicio no está controlado por principios de derecho. De manera que a pesar de ellos no creer que el manifestante estuviese consciente de la muerte, aún pueden creer su manifestación; por el contrario, a pesar de creer que el manifestante estuviese consciente de ello, aún pueden creer que la manifestación no es cierta. En otras palabras, sus principios de apreciación no son necesariamente iguales a las condiciones legales preliminares de admisibilidad, cuyo propósito es uno enteramente diferente.

"Es por tanto erróneo que un juez, luego de haber admitido la manifestación, instruye al jurado que deben rechazar la manifestación, o excluirle de su consideración, si el requisito legal en cuanto a la contemplación de muerte, en su opinión, no existe. Sin duda pueden rechazarla, por este fundamento o por cualquier otro; pero no debe esperarse de ellos que sigan una definición de ley dirigida únicamente al juez." Wigmore, *Evidence* 3ra. Ed., Vol. V, sec. 1451.

■ No obstante la regla expuesta, algunas jurisdicciones siguen el procedimiento que siguió el juez sentenciador. *People* v. *Gonzáles*, 198 P.2d 81 (Cal. 1948) ; *People* v. *Denton*, 19 N.W.2d 476 (Mich. 1945). ([2]) Y el seguirlo no creemos que perjudica al acusado. No lo perjudica pues tiene otra oportunidad ante el jurado para que éste determine si las manifestaciones atribuidas a la víctima fueron hechas en contemplación de muerte. Si así el jurado lo determinare ciertamente no le daría peso a las manifestaciones en sí. Como se dijo en *State* v. *Bordeleau*, 108 Atl. 464 (Me. 1920) basándose en la regla prevaleciente en el Estado de Massachusetts:

"Sin entrar en su discusión, es suficiente decir que el demandado no fue perjudicado por el procedimiento adoptado; le dio oportunidad a su abogado de reargumentar ante el jurado la cuestión de hecho sobre la cual el juez que presidía había resultado adversamente a él en la audiencia preliminar; se le permitió así una segunda oportunidad para lograr que la declaración fuera excluida de consideración. *Com.* v. *Brewer*, 164 Mass. 577, 582, 42 N.E. 92; *Com.* v. *Tucker*, 189 Mass. 457, 475, 76 N.E. 127, 7 L.R.A. (N.S.) 1056. *Donnelly* v. *State, supra.*" ([3]) [26 N.S. Law 463, 503.]

---

([2]) Véase Lane, Víctor H., *The Right of the Jury to Review the Decisions of the Court upon the Admissibility of Evidence as Illustrated in the Law of Dying Declarations*, Mich. L. Rev. Vol. I, pág. 624.

([3]) El procedimiento seguido por el juez que presidió la vista es el mismo seguido en el Estado de Massachusetts para la admisión de confesiones y que el Tribunal Supremo de los Estados Unidos apuntó al discutir la cuestión en *Jackson* v. *Denno*, 378 U.S. 368 (1964) era aceptable. A ese efecto expresó en el escolio 8 que aparece a la pág. 378 lo siguiente:

"No levantamos duda aquí respecto al procedimiento de Massachusetts. En las jurisdicciones que siguen esta regla, el juez oye la evidencia sobre la confesión, él mismo resuelve el conflicto evidenciario y da su propia contestación al *issue* de coacción, rechazando confesiones que estima involuntarias y admitiendo aquéllas que cree voluntarias. Son únicamente estas últimas confesiones las que son oídas por el jurado el cual podrá entonces, bajo este procedimiento disentir del juez, hallar la confesión involuntaria e ignorarla. Dada la integridad del procedimiento preliminar ante el juez, el procedimiento de Massachusetts, en nuestra opinión, no presenta riesgos para los derechos de un acusado. Aunque más nada se sabrá acerca de

Precisamente eso fue lo que ocurrió en el presente caso. El procedimiento seguido por el juez le dio otra oportunidad a la acusada de demostrar ante el jurado que la víctima al hacer las manifestaciones no estaba en *articulo mortis.*

*No habiéndose cometido ninguno de los errores, procede la Confirmación de las sentencias apeladas.*

la opinión del jurado que bajo la regla de New York, el jurado no oye todas las confesiones donde se presenta una cuestión razonable de voluntariedad, sino únicamente aquéllas que un juez en forma real e independiente determina que son voluntarias, basada en toda la evidencia. La consideración del juez sobre la voluntariedad se lleva a cabo separadamente y aparte del *issue* de la confiabilidad de la confesión y de la culpabilidad o inocencia del acusado y sin consideración al hecho de que el *issue* puede levantarse nuevamente ante el jurado si es resuelto en contra del acusado. El récord mostrará las conclusiones del juez a este respecto y sus determinaciones sobre los hechos fundamentales pueden hallarse o descubrirse en el récord."