EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO CASTILLO TORRES, acusado y apelante.

*Número:* CR-78-26      *Resuelto:* 25 de septiembre de 1978

552

*Carmen Ana Rodríguez Maldonado,* abogada del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Ricardo Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Con frecuencia se nos pide que revoquemos una sentencia alegándose que el fiscal no fue diligente. En este caso se nos solicita la revocación porque lo fue.

A la fecha de los hechos el apelante estaba preso en la penitenciaría estatal cumpliendo dos sentencias por dos delitos graves; una por asesinato en segundo grado y la otra por mutilación. Su esposa fue a visitarlo a la penitenciaría y allí la degolló con una navaja, matándola. Por estos hechos fue convicto por jurado de asesinato en primer grado. También fue convicto por violación al Art. 4 de la Ley de Armas, Ley Núm. 17 de 19 de enero de 1951; 25 L.P.R.A. sec. 414. Hubo testigos oculares. Los hechos no están en controversia.

La defensa plantea las siguientes dos cuestiones:

(1) Que erró la Sala de instancia al permitir que el fiscal siguiera con un testigo de defensa "una línea de interrogatorio no cubierta por el examen directo."

(2) Que erró al admitir prueba sobre el examen siquiátrico practicado al apelante el 3 de septiembre de 1964 (el día después de los hechos) por ser dicho examen ilegal por haber sido ordenado por el fiscal sin tener éste facultad para ello.

■ No se cometió el primer error señalado. Como se sabe, se puede interrogar sobre hechos relacionados con situaciones o hechos mencionados en el examen directo. Art. 517, Código de Enjuiciamiento Civil (Ley de Evidencia), 32 L.P.R.A. sec. 2147; *Pueblo* v. *Claudio,* 93 D.P.R. 133, 136–137 (1966). El examen mental del apelante efectuado el día siguiente de los hechos tiene relación directa con su historial clínico siquiátrico, que era el tema sobre el cual declaraba el testigo.

■ Un cambio en el orden de la prueba, excepto cuando prive en forma claramente perjudicial de un derecho legal o constitucional específico al acusado, no es razón para revocar.

Aun cuando se trate de hechos no relacionados, que normalmente deben traerse en la etapa de refutación, los tribunales tienen facultad discrecional para alterar el orden de la prueba, si no se cae en el vicio antes señalado. Estamos más interesados en los méritos de los casos que en las meras artes de la esgrima forense. Buscamos justicia y no brocárdicos. Véase también *Pueblo* v. *Nicole*, 71 D.P.R. 866, 874 (1950). En el mismo tenor véase *United States* v. *Scott*, 98 S.Ct. 2187; 57 L.Ed.2d 65 (1978); 46 L.W. 4653. En aquella ocasión el tribunal inferior se basó en *United States* v. *Jenkins*, 420 U.S. 358 (1975), pero el Tribunal Supremo de los Estados Unidos en este caso de *Scott*, supra, declaró que *Jenkins* había sido decidido erróneamente y lo revocó. Aunque en *Scott* la situación fáctica era distinta a la del caso de autos la posición jurídica y moral que el Tribunal tomó es acorde con la que aquí expresamos nosotros. Salvadas las formas honestamente pero sin sutilezas y excesos frívolos lo determinante son los hechos y la ley. En ausencia de perjuicio sustancial no vemos nada objetable en la práctica de evitar que un testigo ocupe la silla testifical dos veces, especialmente cuando se trata de un perito cuyo tiempo de ordinario es más costoso que el de los testigos corrientes.

■ En cuanto al segundo señalamiento conviene aclarar que el problema de la incapacidad mental del acusado se tipifica en la ley en por lo menos en dos situaciones distintas, las cuales aparentemente el apelante confunde. La primera envuelve la incapacidad del acusado al momento de realizar, esto es, de hacer real, de llevar a cabo, los hechos. Concretan esta situación los Arts. 39, apartado 4, del Código Penal de 1937; 33 L.P.R.A. sec. 85(4) y el Art. 30 del Código Penal vigente; 33 L.P.R.A. sec. 3152.

La incapacidad que contempla la Regla 240 de Procedimiento Criminal es la que puede darse "en cualquier momento después de presentada la acusación o denuncia [lo cual implica que ya se han cometido los hechos y se han considerado

delictivos] y . ... si *el Tribunal* tuviere base razonable para creer que el acusado está mentalmente incapacitado." (Bastardillas nuestras.) En cuyo caso el tribunal suspenderá los procedimientos y señalará una vista para determinar el estado mental del acusado. Nótese que aquí la situación es distinta. La primera situación que describimos se refiere al momento en que el acusado comete los hechos delictivos. La segunda situación, que es la contemplada por la Regla 240 de Procedimiento Criminal, se refiere a la capacidad mental del acusado al momento de ser sometido a juicio. Ambas situaciones son importantes, pero la primera es la más fundamental porque, en definitiva la responsabilidad criminal y civil del acusado dependerá de si al cometer los hechos estaba o no en uso de razón. De ahí nace su intención criminal y de ahí surge su responsabilidad penal.

Como dijimos, la segunda situación, comprendida en la citada Regla 240, se da cuando el acusado, ya cometidos los hechos y ya presentada la acusación o denuncia va a ser sometido al proceso penal. Si en ese momento, cuando va a ser procesado, el tribunal creyese que el acusado está mentalmente incapacitado suspenderá los procedimientos y señalará una vista para determinar el estado mental del acusado a esa fecha.

■ Consciente el fiscal en este caso de que el acusado tenía récord clínico y consciente de la importancia de determinar si estaba o no mentalmente incapacitado el acusado al cometer el asesinato por el cual se le iba a acusar, actuó diligentemente, en protección tanto de los derechos del Estado como de los derechos del propio acusado, al ordenar que el Comité de Siquiatría Forense del Hospital de Siquiatría del Gobierno de Puerto Rico examinase al acusado al día siguiente de los hechos.

Como señala el tratadista Harland M. Goulett en su *The Insanity Defense in Criminal Trials* (1975), págs. 29–30, los fiscales con frecuencia esperan a que se levante la defensa

de locura para solicitar el examen del acusado, pero si transcurren varias semanas entre la fecha de la comisión de los hechos y el momento en que se levanta la defensa de locura, el fiscal debe obtener una evaluación siquiátrica mucho antes.

Los facultativos están de acuerdo, sigue diciendo dicho autor, en que mientras más tiempo pase entre el día de los hechos y el examen siquiátrico, más difícil se hace llegar a una conclusión confiable sobre el estado mental del acusado al momento en que cometió los hechos. Señala el autor que un examen practicado inmediatamente después de cometidos los hechos es mucho más confiable que un examen hecho bastante tiempo después.

Es fácil ver que mientras más temprano se lleve a cabo el examen más fácil será para los siquiatras llegar a conclusiones científicas confiables sobre el estado mental del acusado. Pretender que el Estado no pueda ordenar dicho examen hasta que la defensa plantee la cuestión de la locura o hasta que el tribunal lo plantee el día del juicio, lo cual puede ocurrir meses o años después de la fecha de la comisión de los hechos delictivos, sería establecer un obstáculo innecesario, irracional y perjudicial que entorpecería el debido funcionamiento del sistema judicial y la debida aplicación de la ley. El Estado no tiene que esperar a que la defensa, pasados los meses o los años, se decida a plantear la cuestión de la incapacidad mental del acusado. Si es necesario para hacer justicia el Estado puede tomarse la iniciativa y en este caso así lo era dada la naturaleza de los hechos y dado el historial clínico del acusado. Véase también *State* v. *Freeman*, 559 P.2d 152 (1976).

Pretender que la Quinta Enmienda de la Constitución de los Estados Unidos prohíbe dicho examen es sencillamente reducir dicho texto al absurdo. No fue ésa ciertamente la intención de los autores de la Constitución de los Estados Unidos. Entre los propósitos que dichos autores tuvieron en mente al redactar la Constitución expresaron específicamente los de "establecer la justicia," y "garantizar la tranquilidad

nacional." No hay nada en el texto de dicha enmienda quinta que sostenga lo contrario. Véase Frank Dudley Berry, *Self-Incrimination and the Compulsory Mental Examination: A Proposal*, 15 Ariz. L. Rev. 919–920 (1973). Lo mismo puede decirse de los hombres que redactaron la Constitución de Puerto Rico. Entre sus propósitos específicamente mencionaron los de "promover el bienestar general," y "asegurar . . . el goce cabal de los derechos humanos"—uno de cuyos derechos más importantes es el de la vida—y declararon como factores determinantes de la vida puertorriqueña "la fe en la justicia; la devoción por la vida esforzada, laboriosa y pacífica." Si algún sentido tienen esas palabras y la Carta de Derechos que le precede es que la víctima del apelante tenía derecho a que todos sus derechos constitucionales, los mayores y los menores, no le fuesen arrebatados sin el mínimo debido proceso de ley por un navajazo.

En el caso de autos la prueba iba encaminada a inducir al jurado a creer que el apelante estaba mentalmente incapacitado al cometer el delito. El fiscal desacreditó esa teoría cuando en el contrainterrogatorio del Dr. Valderrábano hizo a éste preguntas sobre el examen siquiátrico a que había sido sometido el apelante el día siguiente al día de los hechos. Como mencionamos antes, el examen fue practicado por el Comité de Siquiatría Forense y dicho Comité de facultativos concluyó que el día en que fue examinado el acusado no evidenciaba síntomas sicóticos activos, que podía distinguir entre el bien y el mal y que estaba capacitado para ser sometido a juicio. También contestó el Dr. Valderrábano que en su opinión el acusado podía distinguir entre el bien y el mal el día anterior del examen, esto es, el día en que cometió el delito. Como puede verse, la acción del ministerio fiscal fue diligente y acertada. Los fiscales tienen el deber de promover los procesos criminales, 3 L.P.R.A. sec. 72, y el de procesar a los delincuentes, 3 L.P.R.A. sec. 95. La acción impugnada en el segundo señalamiento está comprendida dentro de dichos deberes si es que éstos han de ser entendidos con recta razón

y si es que la ley ha de cumplirse. *Cf. Meléndez* v. *Levitt & Sons of P.R.*, 104 D.P.R. 797, 804–810 (1976). No se cometió el segundo error señalado.

*La sentencia apelada será confirmada.*

El Juez Asociado Señor Irizarry Yunqué concurre en el resultado.