INHABITANTS OF DEER ISLE *vs.* INHABITANTS OF WINTERPORT.

Hancock.   Opinion October 10, 1894.

*Pauper.   Residence.   Acts.   Declarations.   Evidence.   R. S., c. 24, § 1, cl. VI.*

Upon the question of a person's intention as to change of residence when leaving his town, his acts in breaking up house-keeping and storing his household goods two or three weeks previous to such leaving are competent evidence.

The declarations of such person during such acts are competent evidence upon the same question.

ON MOTION AND EXCEPTIONS.

This was an action of assumpsit to recover supplies furnished by the town of Deer Isle to a pauper whose settlement it claimed was in the town of Winterport. A verdict was rendered in favor of the plaintiff and the defendant moved for a new trial and also had exceptions. The latter only were considered by the court.

From the exceptions it appeared that there was evidence tending to show that the pauper, Weed, with his wife and infant child, was, on the tenth day of September, 1889, residing in a rented tenement in the town of Winterport, known as the Pendleton house; that the rent was due and unpaid; that during that month, he called on one Daniel O. Clement, then living within fifty feet of the tenement occupied as aforesaid, to help him move his furniture and household goods, then packed, out of the tenement into Clement's house and stable, in the same town, where the pauper had arranged with said Clement to have a part thereof stored for a short time, to wit: all of his furniture and goods except one bedstead and some small articles which he sold, one parlor stove and all family clothing, which parlor stove, with the wife and child and the wife's and child's clothing, went with the wife and child about two or three weeks later to Deer Isle, the wife and child remaining at said Clement's that length of time, on account of the illness of the infant. The pauper the next morning after such removal into the Clement house,

went to Bangor to join the vessel on board of which he was serving as cook.

To prove the declarations of the pauper at the time of the breaking up and moving into the Clement house, defendant's counsel asked the pauper's wife the following question:

"Ques.   What did your husband say his intention was at the time you packed up your clothing and the heater, and yourself and child and husband abandoned the Pendleton house?"

Also for the same purpose defendant's counsel asked the witness, Daniel O. Clement, the following questions:

"Ques.   While you were there assisting Mr. Weed in moving his goods, did he state to you his purpose in breaking up housekeeping and storing his goods?   Ans.   I think he did, up near my house, near the pump."

"Ques.   I will ask you what he did say?"

Both unanswered questions were objected to and excluded subject to exceptions.

There was evidence tending to show that at one time after leaving the Pendleton house and while the pauper with his wife and child were stopping in Deer Isle, he went to Winterport to the house of one Capt. John Philbrook, husband of his wife's sister, and returned the next day; that while there the witness, John Stokell, whom the pauper owed a balance for some of the furniture still stored at Clement's, had a conversation with him.

To prove the declarations of the pauper, the defendant's counsel asked the witness, John Stokell, the following question:

"Ques.   Whether or not, when you had the conversation with Mr. Weed at the house of Captain Philbrook, he told you he was about to move his furniture anywhere? . . . Ans.   Yes, sir, he did."

"Ques.   Now, I ask you where he said he was going to move his furniture?"   (Excluded subject to exception.)

Defendant's counsel stated that the reason he, (the pauper,) did not move his goods from Winterport to Deer Isle, was because the witness Stokell said, "Not till I am paid." (Excluded subject to exception.)

There was evidence tending to prove that during the pauper's

stay at Deer Isle, his wife, in his absence, took the child and went to her sister's, Mrs. Philbrook, in Winterport; that on the pauper's return to Deer Isle a few days after, he went to Winterport to take his wife and child back to Deer Isle, and did take them back against the will of his wife, and that while they were stopping at Deer Isle they had conversations about going back to Winterport.

To prove the pauper's declarations, defendant's counsel asked the witness, Sarah A. Weed, the following questions:

"Ques. What was the nature of his insistence in compelling you to return to Deer Isle?" (Objected to and excluded subject to exceptions, but the court admitted the fact of his insisting on her going back.)

"Ques. Whether or not, while you were at Deer Isle between September, 1889, and June, 1890, you and he talked about going back to Winterport? Ans. We did."

"Ques. What did he say?" (Objected to and excluded subject to exception.)

"Ques. Did he come there (Winterport) for the purpose of taking you back to Deer Isle? Ans. Yes."

"Ques. What did he say as an inducement or otherwise to have you go back?" (Excluded subject to exception.)

"Ques. Why did you go? Ans. He insisted upon me going."

"Ques. If he made any threats if you didn't go?" (Objected to and excluded.)

"Ques. What did he say? Were you willing to go? Ans. No, sir, I was not."

"Ques. What did he say if you didn't go?" (Excluded subject to exception, the fact having been testified to that he insisted, but the nature of the insistence excluded.)

There was evidence tending to show that after the pauper's wife with her child had gone to Deer Isle, and while there, the pauper on his return from the coasting trip, called at the house of Daniel O. Clement in Winterport.

To prove the declarations of the pauper at that time, counsel for the defendants asked the witness, Clement:

"Ques.  What did he say to you, if anything, about where he was stopping or residing?" (Excluded subject to exception.)

Also to prove the declarations of the pauper while he was moving his goods from Clement's to another place in Winterport, for storage, his wife and child still being in Deer Isle, counsel for defendants asked the witness, Howard Grant, the teamster :

"Ques.  Whether or not, during the act of loading or going from Mr. Clement's to Mr. Willey's store, he stated to you where the goods were eventually going?" (Excluded subject to exception.)

"Ques.  Did he make any conversation about where he was living at that time?  Ans.  He did."

"Ques.  Where did he say he was residing?" (Excluded subject to exception.)

There was evidence by the plaintiffs tending to show that the residence of the pauper and his wife at Deer Isle in 1889 and 1890, was as a visitor.

To prove the contrary, the defendant's counsel asked the pauper's wife :

"Ques.  Whether or not it [referring to her going to Deer Isle from said Clement's house] was against your wish that you went?" (Objected to and excluded as immaterial.)

*Defendant's counsel:*  "I ask the question for the purpose of showing that this was not a visit on her part, that she went involuntarily."

*Court:*  "On that view of it perhaps it may be admissible.  I exclude it on the ground that the husband has the control of the residence of the family, notwithstanding his wife's objection.  I will admit it on that ground."

To all these rulings of the court the defendants excepted.

*Elmer P. Spofford*, for plaintiffs.

Declarations accompanying no act, of itself indicative of a design at that time to change his residence, and made two or three weeks prior to departure from the town, are too remote to be received as evidence bearing upon the question of intention.

*Gorham* v. *Canton*, 5 Maine, 266 ; *Wayne* v. *Greene*, 21
Maine, 362 ; *Corinth* v. *Lincoln*, 34 Maine, 313 ; *Richmond*
v. *Thomaston*, 38 Maine, 235 ; *Haynes* v. *Rutter*, 24 Pick. 242 ;
*Brookfield* v. *Warren*, 128 Mass. 287 ; *Carter* v. *Buchannon*,
3 Ga. 517.   Notes added to the case of *People* v. *Vernor*, 35
Cal. 49 (95 Am. Dec. 60).

Declarations of the pauper are admissible only, when they
accompany an act which of itself has a direct reference and
near connection to the moving to or from a place, from one
town to another and not from one place to another in the same
town.   In *Richmond* v. *Thomaston*, *supra*, the court say, "He
was not then in the act of changing his residence ; was not on
his way to Camden, nor to any other place in search of a resi-
dence or home."

*T. W. Vose*, for defendants.

SITTING : PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-
HOUSE, STROUT, JJ.

EMERY, J.   The original pauper settlement of the pauper,
Eben S. Weed, when he came of age. was in Deer Isle, the
plaintiff town.   That town therefore, in bringing this action,
assumed the burden of proving that he had acquired a new pau-
per settlement in Winterport, the defendant town, by having
his home therein for five successive years, under R. S., c. 24, §
1, clause VI.   The defendant town, on the other hand, had the
right to introduce any competent evidence tending to show
an interruption of the continuity of the pauper's residence therein
during such five years.

Mr. Weed, the pauper, was a sailor employed by a Winter-
port ship-master, on a Winterport vessel, engaged in the coasting
trade out of the Penobscot river.   His family, consisting at first
of his wife. and later of wife and young child, were kept by him
in Winterport, the wife keeping house there in different houses.
He stayed with his family there in Winterport when not with
his vessel.   But before five years of such residence had elapsed
and near the last of September or first of October, 1889, his wife

and child were sent or taken by him to his mother's house in Deer Isle, where they remained till the following June. During this interval Mr. Weed also staid at his mother's house with his family when not absent fishing or coasting. Whether in thus leaving Winterport with his family at that time, the pauper abandoned or interrupted his home in Winterport, depended upon his intention in the matter. That intention either party was entitled to show.

A person's intention can only be shown by his acts and words, and any of his acts or words which tend to show his intention are admissible in evidence. With proper caution, however, the law does not admit mere words unconnected with any material act and which the person had no occasion to speak. A mere verbal expression of some past, or future intention, not called out by any relevant circumstances, but uttered voluntarily and perhaps officiously, may be too remote to be of any evidential value. Such an expression, however, called out by material circumstances, and naturally made at the time in explanation of some visible, relevant conduct, is of some, even if of small, evidential value as to a person's actual intention.

In this case, it appeared in evidence without objection, that about September 10, 1889, two or three weeks prior to the family of the pauper actually leaving Winterport, as above stated, he broke up the housekeeping. He also packed his furniture and other household goods, (except a bedstead and some small articles which he sold) and stored them in the house and stable of a neighbor, with whom he had arranged for the storage for a short time. He left his wife and child temporarily at this neighbor's on account of the illness of the child. He himself, then went to Bangor to join his vessel, but in two or three weeks came back and moved his wife and child, with their clothing and a parlor stove to Deer Isle as before stated, leaving the remainder of the furniture and goods packed in the neighbor's house and stable.

The act of the pauper in thus packing, removing and storing his furniture and household goods was followed at a short interval, (two or three weeks) by his further act of removing himself

and his family to Deer Isle. It is true that his intention in performing the latter act, the removal to Deer Isle, is the crucial question; but is there not at least a seeming, ordinary, natural relation between the two acts? Does not the former ordinarily and naturally precede the latter? Does not the former naturally tend to explain the character and purpose of the latter? In seeking to determine whether a person has left town for a simple visit, or for a change of home, is not his prior disposition of his house, furniture and household goods of some evidential value? We think there can be no doubt of the relevancy and materiality of the one act to explain the other.

But, if the prior act was properly in evidence, (as it clearly was) it was open to either party to introduce evidence to explain the character, purpose or intent of that act. If the furniture was soon afterward moved to Deer Isle, that would indicate one purpose of its original packing. If, instead, it was afterward set up in another house in Winterport, that would indicate another purpose. So, if at the time, the pauper said he was breaking up housekeeping, and storing his furniture to be sent to a new home in Deer Isle, that would be explanatory of the purpose. If, on the other hand, he said he was storing the furniture until he could find another house in Winterport, that would also be explanatory of the purpose.

The defendant town, Winterport, offered evidence of the statements made by the pauper in the act of removing and storing his furniture as to his purpose and intentions in so doing. The plaintiff objected, and the offered evidence was excluded. We think for the reasons given above that such exclusion deprived the defendant of a legal right. It is not questioned that such deprivation was injurious to the defendant.

The counsel for the plaintiff contends that the case *Corinth* v. *Lincoln*, 34 Maine, 310, is decisive authority for the exclusion of the evidence. In that case, however, the acts sought to be explained by evidence of declarations accompanying them were themselves immaterial. They "were not acts in the least indicative of a design at that time to change her residence from one town to another, or as going into the town of Corinth as

the place of her home ; no more than those of passing to and from church or public meetings or in going from one part to the other of the house or appurtenances where she was at the time boarding." The difference between the acts in the two cases will be manifest upon comparison.

It is a sound and often recognized principle that when an act is admissible in evidence as indicating an intention, declarations accompanying and explanatory of that act are also admissible. *Richmond* v. *Thomaston*, 38 Maine, 232 ; *State* v. *Walker*, 77 Maine, 488 ; *Etna* v. *Brewer*, 78 Maine, 377. As an instance of how far the admission of declarations of intention has been carried, the late case of *Mutual Life Insurance Co.* v. *Hillmon*, 145 U. S. 285, may be cited. In that case one question was whether Mr. Walters was with Hillmon at Crooked Creek on March 18th. He had written a letter from Wichita, March 1, previous, in which he stated that he was soon to leave there with Hillmon for that neighborhood. The court said the statements of the letter were admissible in evidence upon that question.

*Exceptions sustained.*