## Lee Morris, Boggus Underwood and Clay Russell v. The State.

No. 18501.   Delivered October 28, 1936.
Rehearing Denied November 25, 1936.

The opinion states the case.

*R. H. Templeton,* of Wellington, *Jesse Owens,* of Vernon, and *W. J. Flesher,* of Amarillo, for appellants.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The conviction is for robbery. The penalty assessed against Lee Morris and Boggus Underwood was 15 years confinement in the penitentiary, and the penalty assessed against appellant Clay Russell was confinement in the penitentiary for seven years.

Ray Cannon, the injured party, testified, in substance, as follows: Between 8 p. m. and 9 p. m. on the 17th of November, 1935, two men came into the Texaco filling station where the witness was at work, exhibited a pistol and forced him to deliver to them two dollars. When these men came to the station the witness was outside. After one of them exhibited a pistol the witness was required to go inside the station where his wife was. He and his wife were then made to get down on the floor on their stomachs. After securing the money the two robbers took hold of the telephone and pulled it off of the wall. The witness positively identified appellant Boggus Underwood as the man who exhibited the pistol. Mrs. Ray Cannon, wife of the injured party, gave testimony substantially the same as that of her husband. She went further, however, and positively identified appellant Clay Russell as one of the robbers.

Neither Mr. Cannon nor his wife saw Lee Morris on the occasion of the robbery. The testimony relied upon by the State to connect him with the robbery merely shows that he was with the other appellants at the home of W. T. Brown between 7:30 p. m. and 8 p. m. The three appellants left said place together and returned together about 10 p. m. The following morning they left the place together. In short, the State relied upon testimony to the effect that appellant Morris was with the other appellants before and after the robbery. We are constrained to hold that the testimony is insufficient to sustain the conviction of Morris.

Appellant Clay Russell testified and entered a denial of guilt. Appellant Underwood did not testify. The testimony of witnesses for the appellants raised the issue of alibi.

As to the appellants Underwood and Russell the evidence is deemed sufficient to support the conviction.

In their motion for new trial the appellants set up newly discovered evidence. It appears from the testimony adduced on the motion that after the conviction of appellants, Randall

Hallcomb made a confession in which he stated that he, Ted Smith and Jack LaRue committed the robbery. According to said statement, they drove to the filling station in a Buick automobile. He and LaRue went inside. The victim of the robbery and a woman were inside of the station when they entered. The woman sat in a chair during the time the robbery was being perpetrated. After committing the robbery they did not pull the telephone off the wall. After making said statement Hallcomb was convicted in another case and given a suspended sentence. Thereafter he repudiated the confession found in the present record, and declared that he had been induced to make same by the appellants.

The State did not rely upon circumstantial evidence as to the appellants Underwood and Russell. They were positively identified by the injured party and his wife. The rule is that the declarations of a third party admitting his guilt of the crime for which the accused is upon trial are admissible where the State is relying solely upon circumstantial evidence and the guilt of such party is inconsistent with the guilt of the accused, and the facts show that such party was so situated that he might have committed the crime. Proctor v. State, 25 S. W. (2d) 350; Wise v. State, 273 S. W., 850; Stone v. State, 265 S. W., 900. As the State did not rely upon circumstantial evidence as to Underwood and Russell, the confession of Hallcomb would not be admissible in their behalf. There is nothing in the record to show that Hallcomb would testify as a witness on another trial. On the contrary the record discloses that he had repudiated his confession and would not testify that he had committed the offense.

As to appellants Underwood and Russell, the judgment is affirmed, and as to appellant Morris the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellants Boggus Underwood and Clay Russell have filed a motion for rehearing based upon newly discovered evidence in two particulars. They set up in their motion for new trial that upon the same night of the robbery in the instant case another filling station in the same town was robbed and a pocket book taken from Mr. Woolfalk,

and that said pocket book was found at or near the place where the present robbery was committed, which finding of the pocket book was discovered since the present trial. Appellant's attorneys argue that the same parties must have committed both robberies, and that Woolfalk, not having identified the two appellants named as the parties who robbed him, is persuasive that they are not the parties who committed the instant robbery. If Woolfalk had positively sworn that Underwood and Russell were not the parties who had robbed him and taken his pocket book there would have been some ground for the position taken by appellant; but Woolfalk simply declined to identify appellants as the parties who had committed the robbery upon him. He said he would not swear that appellants were not the boys, and neither would he swear that they were the boys who had committed the robbery at his (Woolfalk's) filling station. There would be no force in the argument that because Woolfalk failed to identify them, therefore, perhaps Mr. and Mrs. Cannon, the victims of the robbery in the present case, were mistaken in their identification of appellants as the parties who robbed them.

The other ground of newly discovered evidence upon which appellants sought a new trial and urge here as a basis of motion for rehearing is the contention that Mrs. Cannon in her testimony before the jury had relied chiefly for the identification of appellant Clay Russell upon the color of a jacket he was wearing, appellant claiming that it had been discovered after the trial that the jacket in question had come into the possession of appellant Russell since the robbery. There would be strength in appellants' position if Mrs. Cannon's identification of Russell had been based upon the jacket in question, but we do not find such to be the fact. Mrs. Cannon's testimony upon the point at issue is reproduced.

"That little fellow in the tan jacket (Russell) was with him (referring to Underwood) * * * This fellow here, Clay Russell, was dressed in, I would say, khaki work clothes and had on a light jacket somewhat like he is dressed now, and had on a cap. * * * Russell talked and when I went down there I recognized him at once; I could not be mistaken about him. * * * They were in there two or three minutes, something like that and I will tell the jury that I will swear positively to that jacket on that boy. I could not be mistaken. * * * I heard them talk that night when they came down to do the hi-jacking, and I heard them talk when I went to look them over to see if they were the same men. There is something unusual about

Clay Russell's eyes, one of them has a scum or something over it. I recognized them from their voices; I heard them talking up at Wellington and down here and I recognized the voice as being the same voice. I could not be mistaken as to them being the same boys. The voice used down there was when they were giving commands about robbing the place, and up there I just heard them talk when the officers, were saying something, and from that talk in which I took no part I recognized it to be the same voice. I said that I recognized the eyes of Clay; he was covered that night except his eyes and I got a sufficient look at the eyes that night that I knew them when I saw them uncovered, and all, up at Wellington. There is something so peculiar about his eyes that I noticed the difference that night, and then picked it out again. I said that one of Russell's eyes has a scum on it, I do not know which one it is, I cannot see them from here. (At the request of Mr. Templeton, the defendant Clay Russell went around close to the witness.) I can see from here and it is the left eye. That night in the excitement there I recognized the queer look of that left eye. I call it a scum, and it was so queer that I recognized it at once when I saw him at Wellington, and I could see that there in such a way that I can now swear to it again."

In view of the testimony of Mrs. Cannon as hereinbefore set out the court was fully warranted in declining to grant a new trial upon the ground of newly discovered evidence with reference to the article of clothing in question. If such testimony had been before the jury it would not probably have changed the result of the trial.

The motion for rehearing is overruled. .