Joseph E. LUMSDEN, Jr.

v.

STATE of Maine and Allan L. Robbins,
Warden, Maine State Prison.

Supreme Judicial Court of Maine.

July 16, 1970.

Sewall, Strater, Winton & Hancock, by
Frank E. Hancock, York, for plaintiff.

**650**

John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for defendants.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

DUFRESNE, Justice.

On appeal from denial of petition for the writ of habeas corpus in post-conviction proceedings under 14 M.R.S.A. §§ 5502–5508. The decision of the single Justice is affirmed and the appeal denied.

Lumsden, the petitioner herein, was indicted by the Grand Jury in and for the County of York at the January term, 1969, of the Superior Court for the alleged commission of two separate crimes of attempt to break and enter two different commercial establishments with intent to commit larceny therein. The first indictment, docketed as No. 6414 on the criminal docket and involving the crime at "Roger's Supa Dolla", so-called, was returned to the Court on January 14, 1969, while the second indictment, docketed as No. 6436 and having reference to the crime at Gagne's Hardware Store, was returned on February 4, 1969. Both crimes were alleged to have been committed on December 28, 1968. No reasons appear in the record why one indictment was returned later in the term than the other. Trial of the second indictment took place on February 12, 1969 resulting in a verdict of guilty as charged. On March 3, 1969 the petitioner retracted his plea of not guilty and entered a plea of guilty to the first indictment and was sentenced to concurrent terms in Maine State Prison of not less than 1 year and not more than 2½ years.

The petitioner's statement of points on appeal raises two issues, 1) whether there was reversible error, cognizable in habeas corpus proceedings, because at trial level he was not given the opportunity to make the election upon which of the 2 indictments he would first be tried, and 2) were both indictments fatally defective for failure to describe the goods which were the subject of the intended larceny and the owners thereof.

Lumsden points to no constitutional or statutory provision in support of an absolute right in the accused to determine the order in which accusations against him may proceed to trial. At common law and as a matter of general criminal practice the prosecuting attorneys have been given the charge of the criminal docket subject to the supervisory discretionary powers of the court, the order of trial of criminal cases ordinarily resting in the sound discretion of the trial court. See, 23 C.J.S. Criminal Law § 929b.

"It is usual in criminal cases to permit the State to select the indictments on which defendants are to be tried, in case there are several charges, and while the Court may direct the State to proceed on some specific indictment, that is a matter largely within the discretion of the trial court, and is not subject to review unless there is an abuse of this discretion." Winkler v. State, 1949, 194 Md. 1, 69 A.2d 674, cert. den. 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343.

In State v. Adcock, 1940, 194 S.C. 234, 9 S.E.2d 730, the trial Court was held not to have abused its discretion in permitting a case pertaining to the keeping of slot machines to be called for trial, after the defendant had sought a continuance on the ground that two cases for violating the liquor laws and for maintaining a nuisance were then pending and defendant was ready to go to trial on one or both of them.

That another case appeared first on the criminal docket was not considered sufficient reason in and of itself for the postponement of the case called for trial, stated the Georgia Court in Griggs v. State, 1926, 35 Ga.App. 663, 134 S.E. 333.

This argument has been raised for the first time in the instant post-conviction proceeding. It was not raised at the time the defendant was called upon to go to trial on the second indictment instead of

on the first one. It was not submitted for review on direct appeal. The law will not permit an accused, who is disappointed because the later of two pending cases is called for trial, to keep his silence, if he has any reasonable ground upon which he may lawfully request that the other case be tried first, take his chances on getting a favorable verdict and, if he loses, at some time later, come into court to void the judgment by raising a point which if timely raised the trial court might have allowed in the exercise of its sound discretion. The error under the circumstances of this case would merely constitute a trial irregularity subject to consideration on appeal but not in post-conviction habeas corpus. Not raised in the trial court this alleged error must be deemed waived and not before us for our consideration. Bennett v. State, 1965, 161 Me. 489, 214 A.2d 667.

However, the defendant in his argument states the orderly administration of criminal justice within the constitutional mandate of speedy trial requirement compels us to decree that this right to elect which of any number of cases pending against a person shall be tried first must be the exclusive privilege of the accused as a matter of fundamental fairness in satisfaction of the modern concepts of due process under the Fourteenth Amendment to the Constitution of the United States and Article 1, Section 6–A of our own Constitution of Maine. We disagree.

■ In Klopfer v. North Carolina, 1967, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1, the United States Supreme Court held that the Sixth Amendment standards governing speedy trial are made obligatory on the States by the Fourteenth Amendment Due Process Clause. But this constitutional provision is not a grant of power; it does not invest the accused with authority to decide which of his cases should be tried first or when his cases are to be tried, if at all. The constitutional requirement of speedy trial merely provides the accused with protective safeguards against unrea-

sonable delays by the State. The contours of the speedy trial guarantee have not been fully defined as yet in scope and content. See, Concurring Opinion of Mr. Justice Brennan in Dickey v. Florida, May 25, 1970, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26.

In Beavers v. Haubert, 1905, 198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950, the United States Supreme Court rejected the argument that the constitutional right to a speedy trial attaches and becomes fixed to the accusation first in time and that whatever may be the demands of public justice they must wait. The right to a speedy trial, said the Court, is not so unqualified and absolute. It is necessarily a relative right, consistent with delays and dependent upon circumstances. The Court there ruled that it was constitutionally permissible for the Government to elect not to proceed on federal indictments in the District of New York and to remove the defendant to the District of Columbia for trial on indictments there pending.

Again, in Rumely v. McCarthy, 1919, 250 U.S. 283, 39 S.Ct. 483, 63 L.Ed. 983, the Court restated the doctrine that the Government's removal of the defendant from the jurisdiction of the New York federal court to allow trial of a pending indictment in the District of Columbia was not ground for dismissal of the indictment pending in the New York jurisdiction as the Government's election, with Court approval, was no invasion of the defendant's constitutional rights to a speedy trial but was a matter of governmental administration subject to sound judicial discretion.

■ In the instant case, both indictments were returned at the same term. There was no delay in the disposition of the cases as both were concluded during the term. There is no constitutional right as such in a defendant to elect upon which of a number of pending accusations he shall be tried first. That choice remains with the prosecuting authorities, as our practice throughout the years has confirmed,

in order to permit an effective enforcement of the criminal law and an orderly management of the criminal dockets in the Courts of this State, subject to the court's discretionary control to avoid abuse and prevent possible deprivation of the accused's constitutional right to a speedy trial. No showing of aggrievement in that respect has been made.

The petitioner's second contention is that both indictments are fatally insufficient, do not describe a crime and thus support his argument that his imprisonment is illegal. He claims that a valid indictment charging the crime of attempt (17 M.R.S.A. § 251) to break and enter any office, etc., or building in which valuable things are kept, with intent to commit a felony or any larceny therein (17 M.R.S.A. § 754) must describe the intended larceny with that degree of particularity as is necessary in the charging of the specific offense of larceny itself, including a description of the goods intended to be stolen and of the person whose property they are. We disagree.

Our Court, in State v. Doran, 1904, 99 Me. 329, 59 A. 440, has approved the Massachusetts doctrine that in such cases a general intent to steal goods completes the offense and the averment of such intent without more, i. e., in general terms, is sufficient. Commonwealth v. Doherty, 1852, Mass., 10 Cush. 52. As a practical matter, it would appear that in many cases of breaking and entering with intent to steal, the specific intent of the prospective thief at the time of the breaking and entering exists only in general terms of stealing something inside, with no particular thought given to the specific article to be stolen or whose property will be taken. It is equally a crime to break and enter with intent to steal something as it is with intent to steal the money, if any, in the cash register. To require more particularity in the description of the intent with which a burglar enters a building than to identify in general terms the ultimate intended offense would so weaken the legislative enactment as to make it practically useless

in cases where the ultimate crime was not committed and there was no further proof of acts tending to particularize objectively the undisclosed original intent of the wrongdoer.

 The indictment must contain an allegation that the breaking and entering, or the attempt to do so, was accompanied by the necessary specific intent or design which by statute is an essential ingredient of the offense, to wit, the intent to steal or commit larceny in the building. When a specific intent is a part of the definition of an offense, that specific intent must be alleged and proved, or confessed, to warrant conviction and sentence for that offense. Galeo v. State, 1911, 107 Me. 474, 479, 78 A. 867.

Similarly, in an indictment for forgery, this Court held sufficient an indictment that merely alleged the forgery to have been done with intent to defraud, without any further particulars of the fraud such as the identity of the party to be defrauded, the means to be used in the commission of the fraud or the object to be accomplished by the same. The Court further stated: "And it has not been usual to set out the definite object to be accomplished, in making the counterfeit instrument; in fact, the object may not have been definitely fixed in the mind of the accused. If the instrument has been made with intent to defraud, it is sufficient." The statute requires no more. State v. Kimball, 1861, 50 Me. 409, 422.

Again, in State v. Rigley, 1909, 105 Me. 161, 73 A. 1003, our Court held a complaint for possession of intoxicating liquors sufficient which recited the possession to be "with intent that the same be sold in this state in violation of law." This Court stated that it was not necessary to particularize the intent any more than was done, because the gist of the offense was in the intent itself, the intent of unlawful sale, not in the proposed mode of execution.

 The gravamen of the charge of attempted breaking and entering with intent

to commit larceny is the coexisting intent to steal at the time of the attempted break. A recital of such intent in general terms clearly informed the defendant of the intended accusation and readily indicated the statute under which the indictment was found. The defendant was entitled as of right to a plain, concise and definite recital of the essential facts constituting the intended offense as shall adequately inform a person of reasonable and normal intelligence of the criminal act charged and the nature thereof, sufficiently enabling him to defend and, upon conviction or acquittal, to make use of the judgment as a basis of a plea of former jeopardy, should the occasion arise. Logan v. State, 1970, Me., 263 A.2d 266; State v. Charette, 1963, 159 Me. 124, 188 A.2d 898. The instant indictments meet the test.

■ The petitioner has raised for the first time at argument the contention that the attempt statute, 17 M.R.S.A. § 251, which provides that whoever attempts to commit an offense and does anything towards it, but fails or is interrupted or is prevented in its execution, shall receive certain punishment, although couched in general terms of "whoever attempts to commit an offense," does not encompass an attempt to commit the offense of breaking and entering with intent to commit a felony or any larceny. This issue was not submitted to the single Justice and will not be entertained for the first time on appeal. This is not a case of exceptional circumstances. Frost v. Lucey, 1967, Me., 231 A.2d 441.

The entry will be

Appeal denied.

POMEROY, J., did not sit.