**STATE of Maine**

**v.**

**Fred O'CLAIR.**

Supreme Judicial Court of Maine.

June 14, 1972.

Foahd J. Saliem, County Atty., Oakland, for plaintiff.

Wathen & Wathen by George A. Wathen, Daniel E. Wathen, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

On October 3, 1968 Fred O'Clair, the appellant, was indicted under 17 M.R.S.A. §

754 for the crime of breaking and entering, with intent to commit larceny, the building of Standard Auto Parts, Inc. situated at Waterville, Maine. Tried before a Kennebec County jury on June 30, 1969, he was found guilty as charged and sentenced on July 2, 1969 to a term in Maine State Prison of not less than 2½ years and not more than 5 years. He appeals to this Court from the judgment of conviction and from the subsequent denial of his motion for a new trial grounded on newly discovered evidence. The appeal is denied.

The appellant's threshold attack was directed against the indictment under Rule 12 of the Maine Rules of Criminal Procedure. He seasonably moved to dismiss the charge, claiming the indictment was fatally defective in that it failed to state facts constituting a criminal offense and, couched as it was in the words of the statute, it did not apprise him with reasonable certainty of the nature of the accusation against him.

The indictment reads in pertinent part as follows:

> *"The Grand Jury Charges*: That Fred O'Clair of Winslow in the County of Kennebec and State of Maine, on or about the eighteenth day of February A. D. 1968, at Waterville, in said County of Kennebec, in the night time of said day did break and enter the building of the Standard Auto Parts, Inc., a corporation, being a place where valuable things were then and there kept, with intent to steal, take and carry away and permanently deprive the Standard Auto Parts, Inc., a corporation, of its property."

█ The appellant first challenges the sufficiency of the description of the accused, where the indictment merely identifies the indicted person as Fred O'Clair of Winslow in the County of Kennebec and State of Maine, whereas the evidence does reveal that the appellant has a son bearing the same name who, prior to the finding of the indictment, was arrested on the warrant then pending for the arrest of Fred O'Clair. The evidence is clear that this arrest was made by an officer who had no knowledge of the facts upon a misdirection from police headquarters and that it was brought about by the appellant himself who told the arresting officer when being arrested on the warrant that the wanted man was his son. An accused is entitled to have an indictment describe him by his full and correct name. It is only when his full and correct name is unknown that further particulars of identity such as physical characteristics, sex, occupation, place of residence, or other details of identification must of necessity be alleged. See, State v. Striar, 1922, 121 Me. 519, 118 A. 377.

█ The appellant does not dispute that the instant indictment carried his full and correct name. Under such circumstances, his constitutional right to be protected against an unreasonable seizure (Constitution of Maine, Article I, § 5) or a vague accusation (Article I, § 6) is complied with since the use of his full and correct name should usually enable the officer to apprehend the proper person and the accused to maintain a plea of former jeopardy if, after conviction or acquittal, a second charge for the same offense is brought against him. The indictment on its face described the person of the appellant with exactitude and is not rendered deficient in matter of substance by reason of the plurality of persons of the same name. The issue then becomes one of identification at trial and from the evidence the jury was justified in finding beyond a reasonable doubt that the appellant was one of the burglars, if not the only one, involved in the burglary at the Standard Auto Parts, Inc.

The appellant's second charge upon the sufficiency of the indictment focusses upon the lack of particulars respecting the intended loot. He contends that the description of the statutory intent to commit larceny (in the instant case—a necessary ingredient of the crime of burglary under 17 M.R.S.A. § 754) is in such broad terms

(with intent to steal, take and carry away and permanently deprive the Standard Auto Parts Inc., a corporation, of its property) that it does not apprise him of the charge he has to answer with that degree of specificity as will satisfy the mandates of our State and Federal Constitutions.

In all criminal prosecutions the accused shall have a right to demand the nature and cause of the accusation. Constitution of Maine, Article I § 6; Amendment VI to the Constitution of the United States. The general rule is that these constitutional requirements are satisfied when the indictment contains such plain, concise and definite allegations of the essential facts constituting the intended offense as shall adequately apprise an accused of reasonable and normal intelligence of the criminal act charged and the nature thereof, sufficiently enabling him to defend and, upon conviction or acquittal, to make use of the judgment as a basis of a plea of former jeopardy, should the occasion arise. State v. Charette, 1963, 159 Me. 124, 188 A.2d 898; State v. Chick, 1970, Me., 263 A.2d 71, 75.

The appellant's claim that a valid indictment charging the crime of breaking and entering a building in which valuable things are kept with intent to commit a larceny therein under 17 M.R.S.A. § 754 must describe the intended larceny with that degree of particularity as is necessary in an indictment for the specific offense of larceny itself to the extent of describing the goods intended to be stolen, was fully rejected in Lumsden v. State, 1970, Me., 267 A.2d 649. The averment of an intent to steal goods or property in general terms is sufficient. We repeat what we said in *Lumsden*, supra, at page 652:

"As a practical matter, it would appear that in many cases of breaking and entering with intent to steal, the specific intent of the prospective thief at the time of the breaking and entering exists only in general terms of stealing something inside, with no particular thought given to the specific article to be stolen or whose property will be taken. It is equally a crime to break and enter with intent to steal something as it is with intent to steal the money, if any, in the cash register. To require more particularity in the description of the intent with which a burglar enters a building than to identify in general terms the ultimate intended offense would so weaken the legislative enactment as to make it practically useless in cases where the ultimate crime was not committed and there was no further proof of acts tending to particularize objectively the undisclosed original intent of the wrongdoer."

The appellant lastly presses his claim for dismissal of the indictment on the ground he was denied due process of law by reason of the State's failure to afford him a speedy trial as necessitated by Article I, § 6 of the Constitution of Maine and the Sixth Amendment to the Constitution of the United States made applicable to the States through the Fourteenth. A person accused of crime is entitled to a discharge or dismissal, if his constitutional right to a speedy trial is violated, and a motion addressed to the court at which the indictment is pending is a proper vehicle for raising such issue. Rule 48(b) M.R. Crim.P. O'Clair's claim of violation of due process is without merit.

The record indicates the following happenings subsequent to the finding of the indictment in October, 1968. On November 13, during the continuing October term, the appellant filed his motion for dismissal of the indictment for insufficiency of its allegations. No action was then taken on the motion by the Presiding Justice because O'Clair had simultaneously moved that the Presiding Justice disqualify himself. The reasons for the recusation do not appear as the motion was not reproduced in this appeal, but the record reveals that the Justice did disqualify himself at the appellant's request. Other relief was granted, however, by the Justice such as the order to file particulars of the charge,

discovery and the setting of bail. The appellant was enlarged to bail on November 14, 1968. On December 12, the case was officially put over to the February term 1969 which was then the next grand jury and criminal term in that county. The Justice presiding at the February term on February 12, 1969 acted on O'Clair's pending motion to dismiss and denied the same. Simultaneously, the Court continued the matter to the following June to be tried with other criminal trials of the May term, the existing bail was cancelled, new bail was ordered and the appellant was committed pending the giving of new bail. The record indicates that these proceedings took place in chambers and all orders were made orally. If this means that no court reporter was present during the course of this judicial activity, we disapprove of such practice. However, no objections were raised to any of the judicial decrees. It was on May 26, 1969 that the appellant, for the first time, manifested belatedly any personal disagreement with the Court's previous scheduling of the case for trial. His motion of that date to dismiss the indictment for alleged violation of his constitutional right to a speedy trial was grounded on the bare excuse that he was led to believe that a judge would be available to hear the case in January, 1969.

The burglary for which the appellant was indicted in October 1968 was committed in February of that year. Undoubtedly, the delay in the presentation of the case before the grand jury was occasioned by the appellant's own crafty maneuvering. Officer Davey of the Maine State Police had received a call from headquarters requesting him to pick up Fred O'Clair at a restaurant in Albion, Maine, since a warrant for his arrest was then pending. When arrested by Officer Davey, O'Clair informed the officer that he had the wrong man. A check with headquarters erroneously indicated that young Fred O'Clair

was wanted and the appellant was immediately released. O'Clair was not re-apprehended thereafter until June 19, 1968 and the probable cause hearing on the burglary charge was held on June 21, 1968. Thus, the instant indictment was returned at the first grand jury session following the bind-over proceedings. We are not concerned herein with any pre-indictment prosecutorial delay. The appellant does not base his grievance thereon. At any rate, the United States Supreme Court in United States v. Marion, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 has said that the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an "accused", an event which occurred in this case only when the appellant was re-arrested on June 19, 1968. As indicated in United States v. Marion, supra.

"[t]he [Sixth] Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch which is appropriate to assure him an early and proper disposition of the charges against him. '[T]he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959)."

Maine, like most of the States that ratified the Bill of Rights had legislation similar to the Habeas Corpus Act of 1679, 31 Charles II, c. 2, which provided that persons jailed for felonies or treason be brought to trial *upon their own motion* within two terms of court or be discharged on bail. Our previous statute [15 M.R.S.A. § 1201—repealed at the time of the adoption of our Maine Rules of Criminal Procedure] intended by the Legislature to implement in certain specific circumstances the speedy trial provision of our own Constitution [1] read as follows:

"§ 1201. Right to speedy trial

\*      \*      \*      \*      \*

To have a speedy, public and impartial trial, \* \* \*.""

---

[1] "Article I, § 6. Rights of persons accused

Section 6. In all criminal prosecutions, the accused shall have a right \* \* \* ;

Any person in prison under indictment shall be tried or bailed at the next term after the finding thereof, *if he demands it,* unless the court is satisfied that some of the witnesses on the part of the State have been enticed away or detained from court by some cause beyond their control. All persons under indictment for felony, if they have been arrested thereon, shall be tried or bailed at the 2nd term after the finding thereof. Any person indicted, although he has not been arrested, is entitled to a speedy trial, *if he demands it* in person in open court." (Emphasis supplied.)

This Court in applying the constitutional mandate in the light of existing legislation passed pursuant thereto ruled that the right to a speedy trial under the Constitution is necessarily relative and whether such a trial has been afforded must be determined from the circumstances of each particular case (see, State v. Couture, in dictum, 1960, 156 Me. 231, 163 A.2d 646; 22A C.J.S. Criminal Law § 467(4); 21 Am.Jur.2d Criminal Law, § 251); that such right is a personal one which the accused himself may waive by actively causing the delays (State v. Hale, 1961, 157 Me. 361, 172 A.2d 631), or by acquiescing in the State's failure to prosecute sooner through his own silence or inaction (State v. Slorah, 1919, 118 Me. 203, 106 A. 768; State v. Kopelow, 1927, 126 Me. 384, 386, 138 A. 625; State v. Harriman, 1969, Me., 259 A.2d 752, 755).[2]

The reference statute, 15 M.R.S.A. § 1201, now only provides that "[t]he existence or expiration of a term of court in no way affects the power of a court to act in a criminal proceeding," and in its stead Rule 48(b), M.R.Crim.P. was substituted.

"Rule 48. Dismissal

(b) By Court. If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the Superior Court, or if there is unnecessary delay in bringing a defendant to trial, the court may upon motion of the defendant dismiss the indictment, information, or complaint."

■ Although the specific statutory time limits, as heretofore obtained and which tended to safeguard an accused's constitutional right to a speedy trial, were discarded and replaced by the more flexible standard of "unnecessary delay" imposed by Rule 48(b) of the Maine Rules of Criminal Procedure, which has the force of law, the change-over was not intended as a repudiation of the long-standing judicial construction of the speedy trial provision. Rather, it manifests on the part of the framers of our rules of criminal procedure a desire to substitute for the former definite term limitations a formula adaptable to a judicial system respecting which the existence or expiration of terms of court as such was meant to be phased out.

"Preexisting authorities in Maine recognizing that a defendant's right to a speedy trial may be waived, and that in order to assert a right to discharge for delay in prosecution, the defendant must have made a demand for a trial, are not affected by the rules." 3 Glassman, Maine Practice, § 48.2, p. 419.

■ In the instant case the appellant showed no resulting prejudice from the time lapse of approximately 12 months between his arrest on June 19, 1968 and his trial on the indictment returned at the first grand jury session following the arrest and the preliminary hearing on the accusation. Furthermore, trial was had approximately one month following O'Clair's first and only representation to the Court that he was pressing for an early hearing. Following his motion for dismissal of the indictment for prosecutorial delay, the appellant demonstrated that he was not ready

2. For opposite view, see cases collected in The Lagging Right to a Speedy Trial, 51 Va.L.Rev. 1587 (1965).

for trial as he was requesting a postponement of the trial date for the purpose of securing certain defense witnesses. In our view the appellant has no cause whatsoever to complain. We find that any delay in the prosecution of the case either originated with him or met with his approval. "A defendant may be disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility." Dickey v. Florida, 1970, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (Brennan, J. concurring opinion).

It is well to repeat the language of the United States Supreme Court in United States v. Ewell, 1966, 383 U.S. 116, 86 S. Ct. 773, 776, 15 L.Ed.2d 627, which we endorsed in State v. Castonguay, 1968, Me., 240 A.2d 747:

"We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950. 'Whether delay in completing a prosecution * * * amounts to an un-constitutional deprivation of rights depends upon the circumstances. * * * The delay must not be purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed. 2d 393. 'The essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041."

■ The appellant claims prejudicial error in the exclusion of evidence. Counsel for the accused had an unsigned and undated photocopy of a statement the original of which allegedly had been given or written by one Ervin Bickford. It purported to recite that Bickford on February 18, 1968 was behind Standard Auto Parts in Waterville between 7:30 and 8:00 p. m. on his way to the river to set a couple of bait-traps and was about 10 feet from the corner of the building when he saw a figure at a distance of some 30 or 40 feet coming from the other side of the building; that this creature mumbled something which he could not understand; that the beam of a flashlight reached his face and a shot was heard; that he ran about 50 to 75 feet losing his hat in the process and then heard another shot; that his get-away from the area was made by going downstream on the ice and then through the woods to Water Street where he hitch-hiked a ride to Oakland. Called to the stand by counsel for the defense, Bickford, with advice of separate counsel, refused to testify on the ground that his testimony might incriminate him. The trial Court agreed. Thus, Bickford was not compelled to identify the statement as his, if it was, and, on objection by the State, it was excluded from the evidence as an exhibit. To counteract this turn of events, counsel for the appellant attempted to put in evidence through one Robert Ifell declarations made to him by Bickford which allegedly corroborated the declarations attributed to Bickford in the written statement. This proffered testimony was characterized as an offer of proof to buttress the admissibility of the written statement and was ob-

viously offered as independent evidence of declarations against interest made by a witness unavailable to testify by reason of the exercise of his Fifth Amendment rights. There was no error.

The proffered testimonial declarations or written statement allegedly made out of court by Bickford constituted hearsay evidence as assertions to prove the truth of matters asserted therein and resting for their evidentiary value upon the credibility of the out-of-court asserter. See, McCormick, Evidence (1 Ed. 1954) § 225, p. 460. It is the general rule that hearsay is inadmissible. State v. Donnell, 1930, 128 Me. 500, 148 A. 747. Exceptions, however, to the hearsay rule have been recognized, such as dying declarations of a deceased person tending to show the cause and manner of death even though not made in the presence of the accused murderer (State v. Bordeleau, 1920, 118 Me. 424, 108 A. 464; State v. Chaplin, 1972, Me., 286 A.2d 325); declarations constituting a verbal part of the act itself (Inhabitants of Deer Isle v. Inhabitants of Winterport, 1894, 87 Me. 37, 32 A. 718; Holyoke v. Holyoke's Estate, 1913, 110 Me. 469, 87 A. 40).

The contention is made that Bickford's declarations to which Ifell, if permitted, would have testified were admissible as an exception to the hearsay rule on the ground that they were declarations against his penal interest.

It is the general rule that declarations of a third person not a party nor in privity with a party to the suit against the pecuniary or proprietary interest of the declarant, when relevant, are admissible, if the declarant is unavailable as a witness. See, 31A C.J.S. Evidence §§ 217–219; 29 Am.Jur.2d Evidence, §§ 617–619.

Declarations against pecuniary or proprietary interest are admitted because they are unlikely to be false. 5 Wigmore, Evidence, §§ 1457–1475. It is reasoned that experience shows that assertions distinctly against one's interest are unlikely to be deliberately false or heedlessly incorrect and the element of self interest affords a reasonably safe substitute for the oath and cross-examination as a guarantee of the truth.

But the hearsay-declaration-against-interest rule was not extended to extra judicial declarations which are against the declarant's penal interest, i. e. declarations which implicate him criminally and subject him to criminal prosecution. This limitation upon the exception to the hearsay rule excluding hearsay declarations against penal interest was first established by the House of Lords in 1844 in the Sussex Peerage Case, 11 Clark & F. 84, a lead which was followed by a great majority of the jurisdictions in this country.[3]

Justice Traynor, in People v. Spriggs, 1964, 60 Cal.2d 868, 36 Cal.Rptr. 841, 389 P.2d 377, points out that a person's interest against being criminally implicated gives reasonable assurance of the veracity of any statement made against such penal interest, as much so, if not more so, as any declara-

3. Donnelly v. United States, 1913, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820; Wells v. State, 1926, 21 Ala.App. 217, 107 So. 31; Tillman v. State, 1914, 112 Ark. 236. 166 S.W. 582; Moya v. People, 1926, 79 Colo. 104, 244 P. 69; State v. Stallings, 1966, 154 Conn. 272, 224 A.2d 718; Cobb v. State, 1963, 219 Ga. 388, 133 S.E.2d 596; Siple v. State, 1900, 154 Ind. 647, 57 N.E. 544; State v. Bailey, 1906, 74 Kan. 873, 87 P. 189; Commonwealth v. Underwood, 1970, Mass., 265 N.E.2d 577; Mays v. State, 1904, 72 Neb. 723, 101 N.W. 979; State v. Gonzales, 1914, 19 N.M. 467, 144 P. 1144; State v. English, 1931, 201 N.C. 295, 159 S.E. 318; In re Winineger's Petition, 1958, Okl.Cr., 337 P.2d 445; State v. Jennings, 1906, 48 Or. 483, 87 P. 524, 89 P. 421; Cox v. State, 1929, 160 Tenn. 221, 22 S.W.2d 225; State v. Hunter, 1898, 18 Wash. 670, 52 P. 247; Buel v. State, 1899, 104 Wis. 132, 80 N.W. 78; Flemming v. State, 1921, 95 Vt. 154, 113 A. 783; Helm v. State, 1890, 67 Miss. 562, 7 So. 487; Chambers v. State, 1971, Miss., 252 So.2d 217; Commonwealth v. Honigman, 1970, 216 Pa.Super. 303, 264 A.2d 424; Alexander v. State, 1968, 84 Nev. 737, 449 P.2d 153.

tion against his pecuniary or proprietary interest may carry. As he adds, incriminating declarations, viewed in proper perspective, ordinarily will entail economic loss which is the basic concept of pecuniary interest involvement. The majority rule has been vigorously criticized.[4]

A minority of courts have departed from the Sussex case limitation upon the admissibility of third persons' declarations against interest and do admit hearsay declarations against penal interest. Some courts, however, favor admissibility only under specific circumstances.[5]

The rule on admissions against interest is based on the absence of the witness. In the instant case, Bickford was in court, but exercised his privilege against self-incrimination and refused to testify respecting any question connected with his alleged oral or written statements respecting certain events at the time of the burglary.

The New York Court, in People v. Brown, supra, n. 5, had this to say about such unavailability of trial testimony:

"But whether the person is dead, or beyond the jurisdiction, or will not testify, and cannot be compelled to testify because of a constitutional privilege, all equally spell out unavailability of trial testimony. If the rule is to be changed to include penal admissions against interest, it ought to embrace unavailability because of the assertion of constitutional right which might be fairly common in the area of penal admissions."

To the same effect, Moore v. Metropolitan Life Ins. Co., Mo.App., 1951, 237 S.W.2d 210, 212; Sutter v. Easterly, 1945, 354 Mo. 282, 189 S.W.2d 284, 162 A.L.R. 437; Liberty Mut. Ins. Co. v. Heard & Jones Drug Stores, Inc., 1969, Tex.Civ.App., 446 S.W. 2d 911.

In Hinds v. John Hancock Mutual Life Insurance Co., 1959, 155 Me. 349, 372–373, 155 A.2d 721, our Court saw no need to decide whether secondary hearsay evidence of declarations of a third person exercising her privilege against self-incrimination was admissible as declarations against penal interest because no proper basis had been laid for the introduction of such evidence.

In most cases where the minority rule was adopted, the self-incriminating declaration of the third person was an unequivocal confession by him of the commission of the crime for which the accused was being prosecuted and which, if allowed in evidence, would tend to exonerate the accused.

In the instant case, we find it unnecessary to determine whether the rule which justifies the admission of declarations against interest as an exception to the hearsay rule should be extended to declarations against one's penal interest to the same extent as declarations against pecuniary and proprietary interests which are commonly admissible. Bickford's statements, even though possibly self-incriminating in a pending accusation directed at him, were not, however, intended by him as inculpatory declarations. Rather, they

---

4. 5 Wigmore, Evidence (3d ed.-1940) §§ 1476, 1477; McCormick, Evidence, 549–553; ALI Model Code of Evidence, 1942, Rule 509; Uniform Rules of Evidence, Rule 63(10); Holmes, J., dissenting opinion in Donnelly v. United States, 1913, 228 U.S. 243, 277, 33 S.Ct. 449, 57 L.Ed. 820. See also, dissents in Chambers v. State (Miss.) supra n. 3, Alexander v. State (Nev.) supra n. 3, In re Winineger's Petition (Okl.) supra, n. 3.

5. See, People v. Spriggs (Cal.) supra, n. 4; People v. Brown, 1970, 26 N.Y.2d 88, 308 N.Y.S.2d 825, 257 N.E.2d 16; State v. Leong 1970, 51 Haw. 581, 465 P.2d 560; People v. Moscatello, 1969, 112 Ill. App.2d 16, 251 N.E.2d 532; State v. Larsen, 1966, 91 Idaho 42, 415 P.2d 685; Dyson v. State, 1965, 238 Md. 398, 209 A.2d 609; Moore v. Metropolitan Life Ins. Co., 1951, Mo.App., 237 S.W.2d 210; Morris v. State, 1936, 131 Tex.Cr.R. 338, 98 S.W.2d 200; Hines v. Commonwealth, 1923, 136 Va. 728, 117 S.E. 843.

were an attempt on his part to absolve himself and possibly the appellant from any connection with the burglary. Exculpatory statements do not come within the concept of declarations against penal interest. State v. Garrison, 1967, 71 Wash.2d 312, 427 P.2d 1012.

■■■■■ The appellant filed a motion for a new trial on the usual grounds that the presiding Justice should have ordered the entry of judgment of acquittal at the close of all the evidence and that the jury verdict of guilty is contrary to the weight of the evidence and is not supported by substantial evidence. Motions for acquittal and for a new trial based upon the insufficiency of the evidence to support the verdict of guilt present like questions and accomplish precisely the same result. They are conceptually and factually interchangeable. State v. McKrackern, 1945, 141 Me. 194, 197, 41 A.2d 817, 818. After verdict, the only question on appeal is whether, in view of all the evidence in the case, the jury was warranted in believing beyond a reasonable doubt that the accused was guilty of the crime charged against him. State v. Goldman, 1971, Me., 281 A.2d 8, 12. And, in determining the sufficiency of the evidence to warrant belief beyond a reasonable doubt, the appellate court in reviewing the record must have in mind that it is for the jury to determine the credence to be given the witnesses and the weight of their testimony. State v. Trask, 1966, Me., 223 A.2d 823.

The appellant does not question that the jury was properly instructed respecting the applicable law. We have examined the record with great care and find that the jury was warranted, after fitting together the several evidentiary pieces of this veritable criminal odyssey, in concluding as a reasonable jury could, and this beyond a reasonable doubt, that there was actually a break and entry with intent to commit larceny into the building of the Standard Auto Parts, Inc. corporation and that, in the light of all the evidence, the appellant

was guilty of that crime. No purpose would be served by a detailed recital of the facts which the jury found sufficient beyond a reasonable doubt to support their verdict of guilt.

■■■■ Finally, the appellant complains of error in the denial of his motion for new trial based on the ground of newly discovered evidence under Rule 33, M.R.Crim.P. At the hearing on this motion, one Gregory Michael Naoum, Jr., who had previously known the appellant when both were inmates in Maine State Prison, testified that he was the person who had committed the burglary of which the appellant had been convicted. At the time of his alleged confession of the reference crime to O'Clair in November, 1969 Naoum was being detained in the Kennebec County jail as a fugitive from justice from the State of New Jersey, where there were pending against him 14 accusations of serious crimes, and he conceded that he was opposing extradition to New Jersey. Nowhere did he testify that the appellant was not at Standard Auto Parts at the time of the burglary. Furthermore, his testimony bears intrinsic marks of implausibility in that Naoum denied removing from the building articles which the evidence without contradiction placed on the outside of the establishment with the stolen goods he was admitting to.

The Justice below in his decision on the motion specifically stated that he did not and could not believe all of Naoum's testimony. He did say that Naoum could have been there, but he was not convinced by Naoum's testimony that O'Clair was not there or that O'Clair was not a party to the burglary. The Court was satisfied that perhaps there were two persons involved and further found that Naoum's testimony on a new trial would not change the verdict of guilt against the appellant. In denying the motion, there was no error.

■■■■ This Court, in State v. Casale, 1952, 148 Me. 312, 92 A.2d 718, has enumerated the necessary prerequisites before a motion for a new trial will be allowed on

the basis of newly discovered evidence: (1) the evidence is such as will probably change the result if a new trial is granted, (2) it has been discovered since the trial, (3) it could not have been discovered before the trial by the exercise of due diligence, (4) it is material to the issue, and (5) it is not merely cumulative or impeaching, unless it is clear that such impeachment would have resulted in a different verdict. We agree with the Justice below that Naoum's testimony does not qualify as such qualitative and factual evidence as would probably change the result upon a retrial.

■■■ As stated in State v. Terroni, 1970, Me., 270 A.2d 75, the evidence supporting a motion for new trial based on newly discovered evidence must be convincing. Otherwise, finality of criminal judgments would be severely jeopardized. Such motions are looked upon with disfavor to foster an end to litigation.

■■■ Confession of guilt on the part of another person does not necessarily entitle a defendant convicted of the crime to a new trial. This type of evidence must be subjected to rigid scrutiny, considered in the light of all counterevidence produced at trial and on hearing of the motion, with the ultimate decision on the motion left to the sound legal discretion of the Justice below. The weight and credibility to be attached to the newly discovered evidence is for the Superior Court Justice and the issue on appeal is whether his decision was clearly wrong. State v. Dodge, 1925, 124 Me. 243, 127 A. 899; People v. Gaines, 1962, 204 Cal.App.2d 624, 22 Cal.Rptr. 556; State v. Morrison, 1965, 246 S.C. 575, 145 S.E.2d 15; State v. Watson, 1966, Mo., 400 S.W.2d 129. See also, State v. Verrill, 1866, 54 Me. 581.

Viewing the record before us in the light of the foregoing principles, we are of the opinion that the Superior Court Justice did not abuse his discretion in failing to grant the appellant a new trial.

All other points of error raised have been fully considered and found to be without merit.

The entry will be

Appeal denied.